In re the Marriage of Nelson Oliver
KELM, Petitioner,

and

Eloise Rae KELM, Respondent.

No. 94SC184.

Supreme Court of Colorado,
En Banc.

Feb. 26, 1996.

Rehearing Denied March 25, 1996.

John E. Kirchner, Colorado Springs, for Petitioner.

William H. Kirkman, Jr., Colorado Springs, for Respondent.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari in *In re Marriage of Kelm*, 878 P.2d 34 (Colo.App.1994), to review whether the trial court erred in awarding wife: (1) a portion of husband's retirement benefits attributable to his employment after divorce; (2) all benefits from her pension plan; and (3) a lump-sum distribution of contributions to the husband's pension plan should he die prior to retirement.[1] The court of appeals affirmed in part and reversed in part. We now hold that the trial court abused its discretion and affirm in part and reverse in part the decision of the court of appeals. We return the case with instructions to the court of appeals to remand the case to the trial court for further proceedings consistent with this opinion.

## I.

Eloise Rae Kelm (wife) and Nelson Oliver Kelm (husband) were married for twenty-six years prior to the dissolution of their mar-

---

1. We granted certiorari on the following issues:

(1) Whether the trial court below awarded the wife a portion of the husband's unmatured future pension benefits which will be attributable to his employment after the date of dissolution.

(2) Whether the practical necessity for deferring distribution of an unmatured pension in order to equally apportion the risk of forfeiture permits a trial court at the time of divorce to ignore an obligation to exclude the portion of future pension payments that will be earned after the marriage is ended.

(3) Whether reserving jurisdiction as to one spouse's unmatured, future pension requires that the trial court similarly reserve jurisdiction as to the other spouse's unmatured, future pension in order to fairly and equitably offset the two plans upon the same considerations, or whether the parties' unmatured pension benefits' can be valued and divided by different methodology and at different points in time.

(4) Whether the court of appeals erred in determining that if husband dies prior to retirement, wife will "receive a lump-sum distribution of only the pre-dissolution contributions."

riage in 1992. At the time of dissolution, husband had worked in a civil service position for the United States Army and possessed a vested interest in federal Civil Service Retirement System (CSRS) benefits having already accumulated nineteen years of service toward his pension. Wife was employed as a part-time librarian with the Colorado public school system. She had accumulated six years of service under Colorado's Public Employee's Retirement Association (PERA) benefit plan. In short, at the time of dissolution, both parties held vested but unmatured interests in their respective pensions.

In addition to the pension benefits, the parties owned a home (which they subsequently sold) and had amassed credit card debt in the amount of $12,600. The marital assets did not permit immediate distribution of husband's pension benefits on a net present value basis to be offset against other assets in the marital estate. It was uncontested that the parties' vested but unmatured interests in the two pensions were marital property. The trial court awarded wife nineteen-thirtieths ($^{19}/_{30}$) of one-half of husband's pension benefits on an as-received basis—a total of 31.7%. The trial court reserved jurisdiction over the husband's pension benefits in the event husband took early retirement or was laid off due to cut backs or early buy-out of his retirement benefits. The trial court awarded wife all of her PERA benefits which it valued according to the contributions made by wife toward the plan by way of withheld salary as of the date of dissolution. Last, the trial court ordered husband " 'to maintain [wife] as beneficiary of the retirement funds in the event of his demise prior to retirement.' " *Kelm,* 878 P.2d at 37 (quoting the trial court).

On husband's appeal of the trial court's property distribution, the court of appeals held that the trial court had not abused its discretion and had properly treated both husband's CSRS and wife's PERA pension benefits. However, the court of appeals found that the trial court erred in awarding wife the entire lump-sum credit under husband's retirement plan if he were to die prior to retirement. Hence, the court of appeals remanded back to the trial court with directions that the trial court amend its order "to provide that wife receive a lump-sum distribution of only the pre-dissolution contributions." *Kelm,* 878 P.2d at 37.

## II.

■ Pension benefits are marital property and are subject to distribution upon dissolution. *In re Marriage of Grubb,* 745 P.2d 661, 665 (Colo.1987). In our recent decision in *In re Marriage of Hunt,* 909 P.2d 525 (Colo. 1995),[2] we explained the different methods of pension distribution and the advantages and disadvantages of each method in detail. Hence, the discussion here will be brief.

■ There are three methods that a court can use to distribute pension benefits upon dissolution: (1) net present value; (2) deferred distribution; and (3) reserve jurisdiction. *See* Brett R. Turner, *Equitable Distribution of Property* § 6.11 (2d ed. 1994 & 1995 Supp.). If the first method is used, the net present value of the pension is distributed immediately and offset against other property in the marital estate. Under the remaining two methods, distribution is delayed. If the deferred distribution method is employed, the trial court devises the nonemployee's percentage share in the pension in advance of receipt of benefits. The nonemployee's share is determined by applying the "time rule" formula if and when the benefits are received.[3] Alternatively, reserve juris-

---

**2.** *Hunt* was consolidated with *In re Marriage of Raimer,* 909 P.2d 525 (Colo.1995), which raised the same issue.

**3.** The "time rule" formula incorporates a "coverture fraction" which comprises a numerator, the length of time (in months or years) of creditable service towards the pension accumulated during the marriage, over the denominator, the length (in months or years) of total employment until

actual receipt of the benefits. The coverture fraction is then divided in half, representing an equal division of the pension benefits attributable to the marriage. The formula is as follows:

$$\frac{\text{Years of Service During Marriage}}{\text{Years of Total Service}} \times \frac{\text{Monthly Benefit}}{\text{(After Taxes)}} \times \tfrac{1}{2}$$

diction permits a trial court to wait until the benefits are actually received and to divide them at that time. This last method allows a trial court the flexibility to consider any changes in circumstances that have transpired during the interim period between dissolution and receipt of benefits.

A brief description of the CSRS and PERA plans is warranted in order to understand the mechanics of the trial court's distribution and the issues presented here. There are two broad categories of pension plans, defined benefit plans and defined contribution plans. Defined benefit plans are usually funded solely by the employer (non-contributory plans).[4] Benefits under such a plan are computed pursuant to a formula containing variables, for example, the employee's length of service and the highest monthly salary. See J. Thomas Oldham, Divorce, Separation and the Distribution of Property § 7.10[2][b] (1995). A military pension plan is a classic example of a defined benefit plan.

In contrast, a defined contribution plan is "one which states the owner's interest as a balance in a plan account." Brett R. Turner, Equitable Distribution of Property § 6.10 at 336 (2d ed. 1994). Contributions are made into the account by the employer and/or the employee pursuant to a prescribed formula. See Oldham § 7.10[2][a]. The employee's contributions vest immediately and the value of the account is readily ascertainable since a separate account is maintained for each employee. Id. Upon retirement, the balance in the employee's account is used to purchase an annuity which funds the retired employee's benefits for the rest of his or her life. Id. Some government plans incorporate aspects of both defined benefit and defined contribution plans. Id. at § 7.10[2][c]. That is the case here—PERA and CSRS plans are considered hybrid plans.

CSRS and PERA are statutorily governed pension plans. See 5 U.S.C. §§ 8331 to –8351 (1994); §§ 24–51–101 to –1404, 10B C.R.S. (1988 & 1995 Supp.). As noted above, both combine characteristics of defined contribution and defined benefit plans. The employee and the employer contribute a predetermined amount towards the plan under the respective CSRS and PERA statutory schemes.[5] Benefits under both plans are calculated according to a formula.[6] The formula, in turn, is linked to the three-years highest salary averaged during the total years of employment.[7] PERA and CSRS benefits vest after five years of service and are not subject to forfeiture past that time.[8] Covered employees are eligible to receive benefits by way of a lifetime annuity when the plans mature, upon retirement age.[9]

In apportioning husband's pension benefits, the trial court utilized the "time rule" formula and awarded wife fifty percent of nineteen-thirtieths of husband's future retirement benefit (a total of 31.7% of the benefits on an as-received basis). The fraction represents husband's nineteen years of service during the marriage over the thirty years of total service that husband claimed he would achieve before retiring. The trial court used the thirty-year figure because it was persuaded by husband's testimony that he was

---

4. Sometimes, however, the employee has the option or is required to contribute (contributory plans).

5. See 5 U.S.C. § 8334(a)(1) (1994); § 24–51–401(1.7), 10B C.R.S. (1995 Supp.).

6. See 5 U.S.C. § 8339 (1994); § 24–51–603(1)(a), 10B C.R.S. (1995 Supp.).

7. See 5 U.S.C. § 8331(4) (1994) (" 'average pay' means the largest annual rate resulting from averaging an employee's . . . rates of basic pay in effect over any 3 consecutive years of creditable service"); § 24–51–101(25)(a)(I), 10B C.R.S. (1988 & 1995 Supp.) (highest average salary means "[o]ne-twelfth of the average of the highest annual salaries upon which contributions were paid, whether earned from one or more employers, that are associated with three periods of twelve consecutive months of service credit").

8. See 5 U.S.C. § 8333(a) (1994) ("An employee must complete at least 5 years of civilian service before he is eligible for an annuity under this subchapter."); § 24–51–101(51), 10B C.R.S. (1988) (" 'Vested benefit' means an entitlement to a future monthly benefit which is earned upon completion of five years of service credit.").

9. Retirement age under both plans is based on a statutorily established schedule. See 5 U.S.C. § 8336 (1994); § 24–51–602, 10B C.R.S. (1995 Supp.). Both plans permit an employee to retire earlier and receive reduced benefits at the time the plans mature.

going to retire at the earliest possible date on which he would be eligible to receive "maximum benefits"—after thirty years of employment. The trial court fixed the coverture fraction in advance of husband's actual retirement date and reserved jurisdiction in the event husband took early retirement or was laid off due to cut backs or early buy-out of his retirement benefits.[10] If any of these events were to take place, the trial court would presumably amend the "time rule" formula to reflect the changed circumstances. This would be accomplished by changing the denominator of the coverture fraction. The court of appeals characterized the trial court's distribution of husband's pension benefits as "a combination of deferred distribution and reserve jurisdiction valuation." *Kelm*, 878 P.2d at 36.

The trial court valued wife's PERA benefits according to the amount she had contributed toward the plan by way of withheld salary as of the date of the dissolution, a total of $3,100. The trial court awarded the PERA benefits entirely to wife. Finally, the trial court ordered husband to name wife as the sole beneficiary of a lump-sum credit in the event of his death prior to retirement.

### III.

Husband raises three grounds for reversal of the trial court's property disposition. First, husband contends that the trial court's use of a coverture fraction permits wife to share in increased benefits that accrue post-dissolution and also to share in pension benefits linked to post-dissolution earnings. Second, husband contends that wife's PERA benefits were inaccurately valued by the trial court and the trial court inequitably applied

different methods of distribution to the two pensions. Last, husband contends that wife's share in death benefits should not have exceeded fifty percent of contributions made during the marriage.

### A.

Husband argues that application of the "time rule" formula improperly permits wife to share in his separate property, *i.e.*, enhanced pension benefits attributable to his post-dissolution efforts and benefits calculated on the basis of his post-dissolution earnings. Husband takes the position that wife is only eligible to receive a portion of the pension benefits that had been amassed as of the date of the decree. Husband retained an expert to determine the value of his benefits if he had terminated employment at the time of dissolution. Under that scenario, husband would not be eligible to receive benefits until he reached the age of sixty-two. Thereby, the expert "froze" husband's high three-year salary to husband's earnings prior to dissolution and excluded pension benefits tied to post-dissolution earnings. On the basis of nineteen years of service, and the salary achieved during that period, the expert calculated that husband would be eligible to receive monthly annuity disbursements of $897. The expert also proposed a present-day valuation of husband's pension of $41,435.78 if husband continued to work until the age of fifty-eight (at which time he would have completed 30 years of service).

The court of appeals rejected husband's argument, holding that "the trial court did not abuse its discretion in determining that wife's fractional share of the retirement benefit should be calculated not as of the date of

---

10. In its "Decree of Dissolution of Marriage and Final Orders," the trial court ruled as follows:

The Court finds and determines from the evidence that [husband] has a Civil Service Retirement System (CSRS) benefit which has been 100% earned during the marriage. The Court finds and determines that [wife] be awarded a fractional portion of this retirement benefit based upon the 19 years of marriage to the date of the Decree. The formula adopted by the Court is that [wife] be awarded $^{19}/_{30}$ths × .50 × a gross amount of retired pay to which [husband] will be entitled at the time of retirement.

The Court has based its formula on the testimony that [husband] will be entitled to receive retired pay after 30 years of service. If [husband] retires early or is subject to a reduction in force or a buy-out of his retirement benefit, this matter must be immediately brought to the attention of the Court. The Court specifically orders that in the event [husband] terminates his employment through the CSRS retirement program, he is to notify the Court, [wife] and her counsel within ten (10) days. In such event, the CSRS system is ordered to pay the benefits to [husband] into the Registry Fund of this court to be disbursed by Court Order.

the dissolution, but as of the date of earliest possible retirement with full benefits." *Kelm*, 878 P.2d at 37. The court of appeals also upheld the calculation of the coverture fraction finding that "[s]ince it appears that husband's pension benefit would not increase if he works more than 30 years, the [trial] court properly reserved jurisdiction to consider only [certain] contingencies." *Id.*

In *In re Marriage of Hunt*, 909 P.2d 525 (Colo.1995), we addressed the issue now before us and held that post-dissolution increases in pension benefits are marital property and are subject to division if distribution is delayed under either the deferred distribution or reserve jurisdiction methods. Specifically, we adopted the "marital foundation" theory and held that, under the Uniform Dissolution of Marriage Act, enhanced pension benefits due to increases in rank are "acquired" during the marriage under section 14–10–113(2), 6B C.R.S. (1987), if distribution is delayed. As a corollary, we held that if the pension is distributed upon dissolution under the net present value method, post-dissolution enhancements in essence are treated as separate property. This dichotomous treatment serves to compensate the non-employee spouse for the delayed distribution and also the risks associated with the delay. Accordingly, we explicitly approved the use of the "time rule" formula which not only compensates the non-employee spouse for the delay but also internalizes the notion that post-dissolution pension enhancements due to employee advances are built upon efforts undertaken during the marriage years.

Although in *Hunt* we considered military pension plans that had neither vested nor matured at the time of dissolution, the analysis we set forth there is equally applicable to the plans presently before us. Husband's

attempt to freeze the value of the pension at the time of dissolution and at the same time reap the rewards of deferred distribution is patently unfair to wife, who must wait to receive her share. Similarly, husband's proposed present day valuation of his pension based upon his continued employment until the thirty-year mark is irrelevant if the deferred distribution method is used. Hence, we agree with the first part of the court of appeals' conclusion—the trial court properly invoked the "time rule" formula.

■ However, we disagree with the second part of the court of appeals' conclusion that the trial court appropriately fixed the denominator of the coverture fraction at thirty and reserved jurisdiction if certain contingencies arose. If husband opts to continue working for a period of time beyond the thirty-year mark, the denominator of the coverture fraction should reflect husband's increased period of employment. Ultimately, wife's share of the pension under the coverture fraction should decrease in proportion to husband's continued efforts in order to properly apportion the increased benefit.[11] Similarly, if husband works less than thirty years, wife's share in the resulting decreased benefits will increase correspondingly because the denominator will be less than thirty.

In addition, the court of appeals incorrectly stated that husband's CSRS benefits would not increase past the thirty-year mark. In fact, CSRS benefits are partially computed from "2 percent of [the employee's] average pay multiplied by so much of his total service as exceeds 10 years." 5 U.S.C. § 8339(a)(3) (1994). Overall benefits, however, are capped at eighty percent of the average pay of the employee. 5 U.S.C. § 8339(f) (1994). If husband opts to continue working past thirty years, any increase in pension

---

11. As we explained in *Hunt,*
> the "time rule" formula alleviates concerns as to what portion of the enhancement is related to either the nonemployee's or employee's efforts during the marriage. If the employee spouse continues to work beyond the date on which he or she is eligible to receive pension benefits, and the trial court orders distribution as of the date of receipt of benefits rather than eligibility, the marital fraction adequately compensates and rewards the employee spouse for

his or her continued efforts. This is so because the marital fraction is based on the length of the marriage during the years of employment (or military service) versus the employee spouse's total employment (or military service). As the employee spouse's total years of employment (or military service) increase, the nonemployee spouse's share of the pension necessarily decreases.

*Hunt,* 909 P.2d at 534–35.

benefits attributable to salary increases should be shared by wife under the *Hunt* rationale.

Leaving the denominator undetermined until the receipt of benefits eliminates the need for the trial court to "reserve jurisdiction" in the event husband takes early retirement or is subject to a reduction in force or early buy-out of his retirement benefits. In fact, the trial court's attempt to address future contingencies, which would shorten husband's period of employment, would have been unnecessary had the trial court correctly applied the deferred distribution method in the first instance.

### B.

█ The trial court awarded wife's PERA pension benefits entirely to wife and valued wife's PERA benefits as of the date of dissolution according to her contributions towards the plan over the six years of her employment ($3,100). In so doing, the trial court noted in its "Decree of Dissolution of Marriage and Final Orders" that wife "has incurred substantial court costs, attorney fees and expert witness fees." In approving the distribution, the court of appeals noted that:

> The [trial] court is not required to value or divide the parties' respective retirement plans by any set method so long as the division is equitable. Here, the wife's retirement benefits were significantly less than the husband's benefits. Since the retirement benefits were the major assets of the marital estate, the trial court divided them equitably.

*Kelm,* 878 P.2d at 37.

Although we agree that wife's PERA benefits seem insignificant relative to husband's CSRS benefits, we find that the trial court erred in its valuation of wife's PERA benefits. The trial court's valuation method ignores the nature of PERA benefits. As discussed above, PERA combines elements of defined benefit and defined contribution plans. Therefore, the present value of wife's PERA account is not based solely on her contributions as of the date of dissolution as would be the case with a pure defined contribution plan. Rather, a present value calcula-

tion is much more complicated. Determining the present value of wife's PERA benefits entails "applying a series of actuarial and investment assumptions relating to the employee's life expectancy and probable retirement age to the contractual or statutorily awarded benefit." Bill Carew, *Tips, Tricks and Traps: Valuing Benefits Under Colorado's PERA Plan,* 22 Colo. Law. 527, 527 (1993); *see also In re Marriage of Nordahl,* 834 P.2d 838, 840 (Colo.App.1992).

Having failed to properly value wife's PERA benefits, the trial court likewise failed to offset the proper amount from the marital estate under the net present value method. The trial court abused its discretion and the court of appeals erred in affirming the trial court distribution of wife's PERA benefits.

█ We reject husband's assertion that the trial court is precluded from using different methods to distribute the parties' two pensions. As we explained in *Hunt,* the method a trial court uses to distribute a pension in effecting an equitable distribution lies within its sound discretion. In choosing a distribution method, the trial court considers the particular needs and circumstances of the parties. See § 14–10–113(1), 6B C.R.S. (1987); *see also In re Marriage of Gallo,* 752 P.2d 47, 55 (Colo.1988). Pensions of radically different proportion relative to one another, as the two here, may very well warrant different treatment. In particular, pensions of relatively low value are well-suited for immediate distribution and offset. *See Hunt,* 909 P.2d at 539 ("A division of pension benefits on a net present value basis at the time of dissolution is appropriate, for example, in those cases where the value of the pension is small because the employee spouse has worked relatively few qualifying years during the marriage or the employee spouse earned a relatively low rate of pay.") (footnote omitted).

### C.

█ Last, we hold that the trial court abused its discretion in requiring husband to designate wife as the one hundred percent beneficiary of a lump-sum credit under the CSRS plan in the event of his death. Pursuant to 5 U.S.C. section 8342 (1994), an em-

ployee entitled to CSRS benefits can designate a beneficiary to receive a lump-sum credit upon death of the employee. The lump-sum credit comprises the unrefunded amount consisting of the portion of the employee's salary withheld for CSRS purposes and amounts deposited by the employee during earlier service, but does not include interest "if the service covered thereby aggregates 1 year or less" or "for the fractional part of the month in the total service." 5 U.S.C. § 8331(8) (1994).

Although the court of appeals reversed and remanded this portion of the trial court's property distribution, we find that the court of appeals failed to accurately depict wife's proper share in death benefits. The court of appeals instructed the trial court on remand "to provide that wife receive a lump-sum distribution of only the pre-dissolution contributions." *Kelm*, 878 P.2d at 37. Instead, wife's percentage share of death benefits if husband dies before retiring should be the same as her percentage share in his pension benefits if he survives to receive the benefits. The same logic applies in both scenarios. Hence, the "time rule" formula is the applicable measure for wife's share of husband's death benefits. The "time rule" formula also ensures that wife will receive the appropriate percentage of interest, a factor that the court of appeals failed to take into account in its attempt to amend the trial court's erroneous ruling. Consequently, on remand, the trial court should have been instructed to apply the same percentage to divide the lump-sum credit as the percentage used to divide the pension benefits husband will be eligible to receive if he survives until retirement.

## IV.

For the foregoing reasons, we affirm in part and reverse in part the judgment of the court of appeals. We return the case with instructions to remand the case to the trial court for property distribution consistent with this opinion.

ERICKSON and LOHR, JJ., concur in part and dissent in part.

Justice ERICKSON, concurring in part and dissenting in part:

I agree with part III(C) of the majority opinion, holding that "the trial court abused its discretion in requiring husband to designate wife as the one hundred percent beneficiary of lump-sum credit under the [Civil Service Retirement System] in the event of his death." *See* maj. op. at 551. I also agree, in principle, with the proposition stated in part III(B) of the majority opinion: namely, that "[p]ensions of radically different proportion relative to one another" may warrant different methods of distribution. *See id.* at 551. However, because I disagree with part III(A) of the majority opinion, I cannot agree with part III(B) in practice.

In part III(A) of the majority opinion, the majority applies the holding of *In re Marriage of Hunt*, 909 P.2d 525 (Colo.1995) (addressing unvested, unmatured pensions) to the situation presented here of vested, but unmatured pensions. I continue to disagree with the holding of *Hunt* that:

an increase in pension benefits attributable to post-dissolution . . . increases *is* marital property when the nonemployee spouse bears a portion of the risk that the pension will not vest, as with the deferred distribution and reserve jurisdiction methods, but is *not* marital property when the risk is borne entirely by the employee spouse under the net present value method.

*Id.* at 550 (Erickson, J., dissenting) (citation omitted); *see id.* at 536.

The holding of *Hunt* is particularly inequitable when, as here, the above-stated disparity occurs within the disbanding marital unit. In this case, the dissolution court used the net present value method of distribution for the wife's pension and a variant of the deferred distribution method of distribution for the husband's pension. When the holding of *Hunt* is coupled in this manner with the majority's holding in part III(B) here, the post-dissolution pension increases of one spouse will be deemed marital property subject to division, while the post-dissolution pension increases of the other spouse will *not* be marital property and, thus, not subject to

division. I cannot agree with this inequitable result.

Accordingly, I dissent to Parts III(A) and III(B) of the majority opinion.

Justice LOHR, concurring in part and dissenting in part:

I agree in substance with the majority's determinations in this case that (1) the deferred distribution method of distributing pension benefits, as implemented through the "time rule" formula, could properly be applied to identify and value the marital property portion of the husband's vested, but unmatured, civil service pension benefits; (2) pension benefits of parties to the same dissolution proceeding may be treated differently depending on their value relative to the remainder of the marital assets; and (3) the "time rule" formula may also be applied to any lump-sum pension benefit payment available as a result of the death of one of the spouses. However, I write separately to express my continuing disagreement, first set forth in my dissent to the court's opinion in *In re Marriage of Hunt,* 909 P.2d 525 (Colo. 1995), with the majority's requirement that the marital property portion of the pension benefits be equally divided between the spouses through the inclusion of the third component of the "time rule" formula,[1] the ½ multiplier.

I concurred in *Hunt* with the majority's application of the first two components of the "time rule" formula to determine the portion of military pension benefits to be distributed as marital property, which necessarily included post-dissolution benefit enhancements, and I concur in the present case with the majority's extension of the applicability of the first two components of this formula to the vested, unmatured pension benefits at issue here. I disagree, however, with the rigid application of the third component of the "time rule" formula, the ½ multiplier, which mandates equal division between the

spouses of the portion of the pension benefits determined to be marital property. As explained more fully in my dissent to *Hunt,* the division of marital property between the spouses is committed to the discretion of the trial court, to be based upon the court's consideration of the statutory criteria codified at section 14–10–113(1)(a)–(d), 6B C.R.S. (1987). By requiring trial courts to divide these benefits equally, without regard to the specific circumstances of the parties, the majority impermissibly limits the traditional discretion of the trial courts and interferes with the trial courts' ability to effect an equitable distribution of the marital property. Despite the majority's contentions, maj. op. at 551, the statutory criteria in section 14–10–113(1) are not considered in the court's selection of a present or future method of distribution. *See Hunt,* 909 P.2d at 546 (Lohr, J., dissenting). Accordingly, I dissent from the adoption and application of the "time rule" formula to the extent that it prescribes the equal division of the marital property portion of the pension benefits and thereby compromises the trial court's ability to fashion an equitable division of the marital assets.

It is not clear from the record in the present case whether the trial court considered the requisite statutory criteria in evenly dividing between the parties the portion of the husband's pension benefits classified as marital property. Consequently, on remand, I would require the trial court to consider the factors identified in section 14–10–113(1) before dividing the marital portion of the husband's pension benefits. In all other respects I agree with the majority's resolution of the issues presented by this case.

---

1. The "time rule" formula adopted by the majority in *Hunt* for the determination of the portion of pension benefits to be classified as marital property and for division of that marital property between the spouses under the deferred distribution method is as follows:

$$\frac{\text{Years of Service During Marriage}}{\text{Years of Total Service}} \times \text{Monthly Benefit (After Taxes)} \times \text{½}$$

*In re Marriage of Hunt,* 909 P.2d 525, 532 (Colo. 1995).