727 A.2d 1038 (1999)
320 N.J. Super. 524
Karen K. RISOLDI, Plaintiff-Appellant,
v.
Angelo J. RISOLDI, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted March 10, 1999.
Decided May 3, 1999.
*1039 Stark & Stark, attorneys for plaintiff-appellant (Maria P. Imbalzano, Lawrenceville, of counsel and on the brief).
Angelo J. Risoldi, defendant-respondent pro se.
Before Judges KING, NEWMAN and FALL.
The opinion of the court was delivered by FALL, J.S.C. (temporarily assigned)
In this post-judgment matrimonial pension evaluation and distribution dispute, we examine the appropriate method for evaluating the non-pensioner wife's equitable distribution, deferred-distribution, interest in her husband's Public Employees Retirement System (PERS) pension where the parties agreed to a partial distribution through the present-value offset of a portion of her interest in exchange for the husband's interest in the marital domicile, and a deferred distribution of the remainder of the wife's interest in his pension until the husband's retirement date, through entry of a qualified domestic relations order (QDRO).
This hybrid, or, split equitable distribution of the non-pensioner spouse's interest in her husband's pension by factoring-out a portion thereof to allow a present-value offset, with a deferred distribution of her remaining interest, presents pension distribution and valuation issues of first impression.
We rule that the value derived from a present actuarial value analysis of a pensioner spouse's interest in a defined-benefit pension plan cannot be utilized to value the non-pensioner spouse's future equitable distribution interest in that pension when the distribution of that interest is deferred, through use of a qualified domestic relations order (QDRO), to the date of the pensioner's retirement.
I
Plaintiff and defendant were married on July 26, 1975. They have three children: Michael A. Risoldi born on February 16, 1978; Adam T. Risoldi born on February 13, 1983; and Angelo J. Risoldi born on November 5, 1986. Michael is emancipated. Plaintiff filed her divorce complaint on August 6, 1996.
Defendant had a gross salary of $60,719 in 1996 as a Senior Systems Control Supervisor for the New Jersey Turnpike Authority. Plaintiff is a homemaker. She quit her job with the State of New Jersey in early 1978 to take care of the children. Defendant is enrolled in the Public Employees Retirement System (PERS). Employees of the New *1040 Jersey Turnpike Authority are subject to the same membership, contribution and benefit provisions of PERS as State employees. N.J.S.A. 43:15A-73(a). Between 1973 and 1981 defendant worked as a school teacher and was enrolled in the New Jersey Teachers Pension and Annuity Fund (TPAF). See N.J.S.A. 18A:66-1 to -192. In January 1982 defendant began his employment with the New Jersey Turnpike Authority and transferred his creditable service in TPAF to PERS. See N.J.S.A. 43:15A-14.
On November 19, 1997 the parties attended an Early Settlement Panel (ESP) Hearing. See R. 5:5-5. Defendant appeared pro se. The parties reached an agreement on all issues and placed that agreement on the record before the court on November 19, 1997. The only portion of that agreement now at issue relates to plaintiff's equitable distribution interest in defendant's PERS pension. The record of the November 19, 1997 hearing reflects that portion of the agreement, as follows:
Mr. Risoldi's interest in the home has been agreed to be $28,500. In exchange for his interest in the home, Mrs. Risoldi is going to give up part of her share of his pension. And we have agreed that Mrs. Risoldi will be entitled to 22 percent of the amount that accumulated during the marriage of Mr. Risoldi['s] pension, and that will be done through a qualified domestic relations order.
It's been agreed that the form of the order will be drafted by [P]ension [E]valuators and then the parties will split the cost of the QDRO.
The parties were unable to resolve the form of the final judgment of divorce, and after cross-applications to the court, the final judgment was prepared by the court and executed on April 1, 1998. It contains the following provision concerning equitable distribution of the pension:
1. Marital Home  The defendant's interest in the marital home located at 238 Lynwood Avenue, Trenton, New Jersey, shall be transferred to the plaintiff by Deed signed by the defendant within 30 days after the court signs the Final Judgment of Divorce. The parties shall share the cost of transferring title. The plaintiff shall be responsible for all real estate taxes, utilities upkeep, and maintenance of said home. The defendant's interest in the marital home is worth $28,500. In exchange for his interest in the marital home the defendant shall receive a credit against the plaintiff's interest in the defendant's pension plan. The plaintiff shall be entitled to 22% of the defendant's pension through the State of New Jersey, that accumulated during the marriage. That determination shall be done through a Qualified Domestic Relations Order. The form of the order will be drafted by Pension [Appraisers, Inc.] and the parties will split the cost of the QDRO.
During the pendency of the divorce case, defendant retained Pension Appraisers, Inc. to evaluate his pension. Prior to the November 19, 1997 ESP conference, Pension Appraisers, Inc. issued a report dated October 14, 1997. It calculated the present value of defendant's defined-benefit pension plan as of August 2, 1996, four days before the divorce complaint was filed, and determined the present actuarial value of defendant's plan earned during the marriage as of August 2, 1996 was $100,341.98. Among the assumptions used to arrive at the present actuarial value were that defendant terminated his participation in PERS as of August 2, 1996; the marriage ended on that date for equitable distribution purposes; defendant's final average gross salary was $52,460.21; defendant will retire at age sixty; and various assumed interest rates, mortality tables, cost-of-living adjustments and other factors "used by the Pension Benefit Guaranty to determine the present value of annuities for single-employer plans."
Sometime after November 19, 1997 Pension Appraisers, Inc. prepared a proposed form of a QDRO. This proposed QDRO defines plaintiff's remaining share of defendant's pension as $330.95 per month, which is twenty-two percent of defendant's assumed monthly pension allowance contained in the present actuarial evaluation of defendant's PERS pension, contained in the October 14, 1997 report. Because of the dispute over the *1041 language of the final judgment, this QDRO was not executed.
After entry of the final judgment on April 1,1998, plaintiff wrote to Pension Appraisers, Inc., requesting it amend the proposed form of QDRO to conform to the court-prepared final judgment. Plaintiff's letter was not specific regarding exactly what changes were proposed. On April 16, 1998 defendant wrote to Pension Appraisers, Inc., instructing them not to amend the form of QDRO as requested by plaintiff because he believed the QDRO conformed to the final judgment of divorce and case law. Defendant also sent a letter to plaintiff on April 16, 1998 explaining that he directed Pension Appraisers, Inc. not to prepare a new QDRO.
Defendant, acting pro se, filed a notice of motion for reconsideration to amend the final judgment of divorce on the issue of life insurance, returnable May 15, 1998. Plaintiff then filed a cross-motion requesting defendant's motion for reconsideration be denied and requesting the form of the QDRO be resolved.
On May 1, 1998 plaintiff submitted a proposed form of QDRO drafted by Pension Appraisers, Inc. which defined plaintiff's interest in defendant's pension through a formula which multiplies her twenty-two percent interest by a coverture fraction (the numerator being the number of years during coverture that defendant was in the PERS system; the denominator being the total number of years defendant was enrolled in PERS as of the date of retirement), and then multiplies that result by the amount of defendant's monthly pension allowance, determined at the time of his retirement.[1] Defendant objected to plaintiff's proposed QDRO.
On May 15, 1998 the motion judge heard oral arguments. Plaintiff was represented by her attorney and defendant argued pro se. Defendant explained he has a fixed pension from the State of New Jersey with the benefit calculation based on the average of the preceding three years' salary or on any three fiscal years of his membership in the plan providing the largest possible benefit. Defendant asserted plaintiff is not entitled to share in increases in the pension that occur due to his increases in salary post-divorce. Defendant argued plaintiff's share of the pension should be calculated based on his average salary for the three years prior to August 6, 1996, the date the divorce complaint was filed. Plaintiff argued the pension figure should not be calculated at the current present-value rate because payment of her share is deferred until the date defendant retires. Plaintiff claimed the pension figure should take into consideration cost-of-living increases, inflation and interest.
The motion judge reserved his decision until May 18, 1998 when he placed his opinion on the record. The judge stated he would enter the QDRO proposed by defendant and prepared by Pension Appraisers, Inc. The judge relied on Hayden v. Hayden, 284 N.J.Super. 418, 665 A.2d 772 (App.Div. 1995), in ruling that defendant's position was correct. The judge said the Hayden decision limited the holding in Moore v. Moore, 114 N.J. 147, 553 A.2d 20 (1989), the case plaintiff relied on. He ruled plaintiff's share of pension benefits is limited to $330.95 per month, which is twenty-two percent of the actuarial-determined monthly pension benefit of defendant, contained in the October 14, 1997 report of Pension Evaluators, Inc. The judge also stated, "[o]f course, once those benefits commence, [plaintiff] will be able to share in a cost of living increase if there are any such increases." The judge did not explain how any cost-of-living increases were to be calculated. On May 18, 1998 the judge signed the QDRO proposed by defendant and entered an order memorializing his rulings on the motions. Neither the QDRO entered by the judge nor the order reflect that cost-of-living increases were to be included in plaintiff's share of the pension.
On appeal, plaintiff presents the following arguments for consideration:
POINT I
THE LOWER COURT ERRED IN BASING ITS DECISION ON THE HAYDEN CASE WHICH IS A PENSION CASE *1042 AND IGNORING THE MOORE CASE WHICH DISCUSSES FUTURE INTERESTS.
POINT II
THE LOWER COURT ERRED IN ENTERING THE DEFENDANT'S PROPOSED DOMESTIC RELATIONS ORDER WHICH LIMITS PLAINTIFF'S INTEREST IN DEFENDANT'S PENSION TO ITS PRESENT VALUE ON THE DATE OF THE COMPLAINT.
POINT III
THE LOWER COURT IN ENTERING THE DOMESTIC RELATIONS ORDER LIMITING PLAINTIFF'S INTEREST IN DEFENDANT'S PENSION TO A MONTHLY AMOUNT CALCULATED BY USING DATE OF COMPLAINT VALUES IS NOT ONLY AT ODDS WITH ITS OWN INTENTION THAT PLAINTIFF RECEIVE HER SHARE WITH INTEREST BUT WITH THE PRINCIPLES OF FAIRNESS AND EQUITY.
Since these arguments involve overlapping issues of pension evaluation and distribution, we consider them together.
II
The evaluation and equitable distribution of pensions presents troublesome challenges to litigants, practitioners and judges in matrimonial cases. Our analysis of the issues presented must begin with a discussion of the pension plan in question.
PERS in the Division of Pensions and Benefits of the Department of Treasury was established pursuant to N.J.S.A. 43:15A-7 (L.1954. c. 84, as subsequently amended), effective January 2, 1955. This is a mandatory contributory defined-benefit pension system.
The Employment Retirement Income Security Act (ERISA), 29 U.S.C.A. §§ 1001 to 1461, adopted in 1974, was passed to establish uniform national standards for employee pension plans. 29 U.S.C.A. § 1001(a). PERS is in compliance with the requirements of ERISA. Under ERISA, a retirement plan must contain a "spendthrift" provision, which requires that benefits under the plan not be assigned or alienated. 29 U.S.C.A. § 1056(d)(1). Consequently, pension plan administrators and trustees of ERISA pension plans were not permitted to comply with state-court orders equitably dividing pension plans among divorcing spouses.
On August 23, 1984, the Retirement Equity Act (REA), Pub.L. 98-397, was enacted, making several important changes to ERISA. Beginning January 1, 1985, pension plan administrators and trustees were required to recognize and act upon any QDRO issued by a court pursuant to state law, making a QDRO statutorily exempt from the anti-alienation provisions of the IRS Code and ERISA. 29 U.S.C.A. § 1056(d)(3)(A) and (B).
In essence, these changes permitted a direct distribution to the non-pensioner spouse of a QDRO-designated share of the pensioner's ERISA retirement benefit. The non-pensioner spouse then becomes responsible for the tax consequences.
A QDRO is defined by the REA as any judgment, decree or order which is made pursuant to a state's domestic relations law and has an alternate payee, which includes any spouse, former spouse, child or other dependent of the plan participant, and relates to the provision of child support, alimony or marital property rights to the alternate payee. 29 U.S.C.A. § 1056(d)(3)(B)(i) and (ii). To qualify as a QDRO, the order must create or recognize the existence of an alternate payee's right to receive all or a part of the benefits payable with respect to a particular participant in a plan. 29 U.S.C.A. § 1056(d)(3)(B)(i)(I).
A QDRO must contain, among other things, the amount or percentage of benefits to be paid by the plan to the alternate payee or the manner in which this will be determined. 29 U.S.C.A. § 1056(d)(3)(C).
ERISA divides retirement plans into two broad categories: (1) defined-benefit plans; and (2) defined-contribution plans. See 29 U.S.C.A. § 1002(35) and (36). The PERS is a defined-benefit pension plan, where the employer agrees to pay a specified monthly or annual benefit at retirement, calculated in *1043 accordance with a formula contained in the plan.
To provide for PERS pension allowances, several funds were created. N.J.S.A. 43:15A-22. The "contingent reserve fund" is the fund into which contributions are made by the State and other PERS employers. N.J.S.A. 43:15A-24. This employer contribution is known as the "normal contribution," in an amount determined through a periodic actuarial analysis. N.J.S.A. 43:15A-24(a). The "annuity savings fund" is the fund into which accumulated deductions and contributions by PERS members are deposited. N.J.S.A. 43:15A-25. A single account is established in this fund for each PERS member and all contributions deducted from each member's compensation are credited to the employee's account. Id. Members like defendant, enrolled in PERS prior to July 1, 1994, contribute five-percent of their compensation to the system. Up until June 30, 1996, defendant's contribution was four-percent of his annual gross earnings.
Upon retirement, the accumulated contributions of the employee-member account, together with regular interest, are transferred from the annuity savings fund to the "retirement reserve fund." The reserve needed to produce the balance of that employee's retirement allowance is then transferred to the retirement reserve fund from the contingent reserve fund. The monthly retirement allowances are then paid from the retirement reserve fund. N.J.S.A. 43:15A-27. The amount of the contribution made by the employee has no bearing on the amount of the pension allowance.
A PERS member who has attained age sixty may retire. N.J.S.A. 43:15A-47(a). Upon retirement for service, a member receives a retirement allowance consisting of two components: (1) an "annuity" for life derived from the accumulated contributions and interest of a member; and (2) a "pension" in the amount which, when added to the annuity, will provide a total retirement allowance of one-sixtieth of his final compensation for each year of service credited. N.J.S.A. 43:15A-48(a) and (b). The term "final compensation" is defined as,
the average annual compensation for which contributions are made for the three years of creditable service in New Jersey immediately preceding the member's retirement or death, or it shall mean the average annual compensation for New Jersey service for which contributions are made during any three fiscal years of his or her membership providing the largest possible benefit to the member or the member's beneficiary.
[N.J.S.A. 43:15A-6h.]
The computation of the total monthly retirement allowance is derived through application of two variable factors to the statutory formula: (1) years of creditable service; and (2) the greater of the average annual compensation for the three years of creditable service immediately prior to retirement or the average annual compensation during any three years of creditable service, whichever provides the largest possible benefit. N.J.S.A. 43:15A-48b.
At the time of retirement, the member shall receive benefits in a retirement allowance payable throughout life. However, the member may, on retirement, elect to receive the present actuarial value equivalent of the retirement allowance in a lesser retirement allowance payable throughout life, under one of four options contained in N.J.S.A. 43:15A-50. Under those options, by converting the retirement allowance at retirement to a present actuarial value, this section permits the member to have the balance, or a designated portion, of the actuarial value paid to a designated beneficiary in the event the member dies prior to receiving the full actuarial value through receipt of the monthly pension benefit. As defendant has not yet "retired," there is no way of determining whether he will seek any of those options. The present actuarial value determined by Pension Evaluators, Inc. assumed a retirement allowance computed in accordance with the formula contained in N.J.S.A. 43:15A-48b and computed the present value of the pension to reflect anticipated events, without regard to any other options available under N.J.S.A. 43:15A-50. See 29 U.S.C.A. § 1002(27).
As a defined-benefit plan, defendant's retirement allowance will be calculated at the *1044 time of his retirement based on the formula contained in N.J.S.A. 43:15A-48b, unless, on retirement, he elects one of the options contained in N.J.S.A. 43:15A-50. In either event, the amount of the retirement allowance is not dependent on the contributions defendant makes towards the plan. However, a percentage of defendant's base salary is deducted each year and placed into the PERS annuity savings fund. As noted, effective July 1, 1996 the contribution rate was five-percent of gross earnings. In 1996 the State deducted $2,363.04 from defendant's base salary as his contribution to this mandatory retirement plan.
Plaintiff argues the motion judge erred in basing his decision on the pension-evaluation case of Hayden v. Hayden, 284 N.J.Super. 418, 665 A.2d 772 (App.Div.1995), and ignoring the future-interests distribution case of Moore v. Moore, 114 N.J. 147, 553 A.2d 20 (1989). Plaintiff asserts Hayden involved a pension case where the spouse was presently receiving her payout in monthly installments with interest. In contrast, here, plaintiff states she must wait until the year 2010 to begin receiving her share of the pension in monthly installments and that the motion judge failed to award interest. Plaintiff argues Hayden was a present-valuation case and is inapplicable because this matter is a deferred-payout case. Plaintiff asserts the method used in Moore v. Moore should be applied here. Defendant maintains the motion judge properly relied on Hayden and that plaintiff is not entitled to any post-divorce increases in defendant's retirement benefits.
In her reply brief plaintiff argues defendant's assertion that plaintiff accepted defendant's $330.95 per-month proposal is inadmissible under N.J.R.E. 408 because it was part of the parties' settlement negotiations. Plaintiff also argues in her reply brief that defendant's conversations with Ted Long of Pension Appraisers, Inc. are inadmissible hearsay. Because the issues raised on this appeal can be determined without consideration of plaintiff's prior acceptance of the $330.95 per month proposal or defendant's conversations with Mr. Long, we need not address those arguments.
In Moore, 114 N.J. at 151, 553 A.2d 20, the Court held the right to receive future post-retirement cost-of-living increases payable to pensioners under the New Jersey Police and Firemen's Retirement system (PFRS) qualifies as marital property subject to equitable distribution. However, the extent of inclusion of such post-retirement cost-of-living increases is limited to those attributable to the portion of the pension that was earned during the marriage. Ibid.
In Moore, the parties were married in 1961 and the complaint for divorce was filed in August 1979. The parties had two children and acquired significant assets. At issue was the valuation of the husband's PFRS pension and the method of distribution of the wife's share. The valuation expert made assumptions regarding interest rates and mortality and then calculated the discounted current value of that portion of the pension accruing from contributions made during the marriage. The specific issue in Moore was whether the value of the pension should include future salary increases and post-retirement cost-of-living increases.
The Court recognized that the right to receive benefits accruing to a spouse subsequent to a divorce are subject to equitable distribution if they are related to the joint efforts of the parties. Id. at 154, 553 A.2d 20 (citing, Whitfield v. Whitfield, 222 N.J.Super. 36, 47, 535 A.2d 986 (App.Div.1987); Amato v. Amato, 180 N.J.Super. 210, 219, 434 A.2d 639 (App.Div.1981); Kikkert v. Kikkert, 177 N.J.Super. 471, 475, 427 A.2d 76 (App.Div.), aff'd o.b., 88 N.J. 4, 438 A.2d 317 (1981); Weir v. Weir, 173 N.J.Super. 130, 133-34, 413 A.2d 638 (Ch.1980); McGrew v. McGrew, 151 N.J.Super. 515, 518, 377 A.2d 697 (App.Div.1977); Scherzer v. Scherzer, 136 N.J.Super. 397, 401-02, 346 A.2d 434 (App.Div.1975), certif. denied, 69 N.J. 391 354 A.2d 319 (1976); Blitt v. Blitt, 139 N.J.Super. 213, 217-18, 353 A.2d 144 (Ch.Div.1976)).
The Court noted post-retirement cost-of-living increases are paid by the government and are unrelated to the employee's future personal efforts and are attributable to past contributions and service. Moore, 114 N.J. at 157, 553 A.2d 20. This reasoning is based on the fact there would be no post-retirement *1045 cost-of-living increases without the past contributions and service. Ibid. Clearly, the portion of the contributions and services to the plan made during the marriage relate to the joint efforts of the marital partners. Accordingly, that segment of cost-of-living increases attributable to those contributions and services made during the marriage from the joint efforts of both parties are subject to equitable distribution. Ibid.
The fact that these benefits become due and owing subsequent to the divorce does not immunize them from equitable distribution. Id. at 158, 553 A.2d 20. The Court explained:
The uncertainties and contingencies inherent in such future benefits are issues that go to how and when such benefits are to be equitably distributed, not to whether they should be distributed. Regardless of the speculative nature of future post-retirement cost-of-living benefits they are not immune from equitable distribution.
[Id. at 158-59, 553 A.2d 20.]
The Court noted that in equitable distribution cases not involving pensions New Jersey courts have included future unaccrued benefits in present-value calculations. Id. at 159, 553 A.2d 20. (Citing, Dugan v. Dugan, 92 N.J. 423, 433, 457 A.2d 1 (1983); Stern v. Stern, 66 N.J. 340, 346, 331 A.2d 257 (1975)).
The Court recognized there are two ways trial courts have equitably distributed pensionsthe "deferred-distribution" method and the present-value "immediate offset or payment" method. Moore, 114 N.J. at 159, 553 A.2d 20. The major drawback of the present-value method is the difficulty inherent in fixing a present value for future benefits. Id. at 160, 553 A.2d 20. The Court then discussed a third alternative:
We recognize that this method [present value distribution method], while preferred, is not the only way in which an equitable share of a future contingent benefit could ever be awarded. Indeed, in addition to the deferred distribution method, in situations in which the future contingent benefit is not very likely to accrue, a form of partial deferred distribution could be employed.
The `partial deferred distribution' approach would entail a current valuation award of the appropriate share of the non-contingent portion of the pension and a deferred distribution of the share of the contingent benefits if and when they are paid to the employee spouse. The `partial deferred distribution award' is supported by some precedent, (citations omitted). This method of distribution would allow the non-employee spouse immediate enjoyment of part of his or her equitable distribution award and yet effectively protect his or her right to share future contingent benefits.
[Id. at 161, 553 A.2d 20.]
The Court cautioned that because this method prolongs entanglement of the parties, the "partial deferred distribution" method should be used only where the future benefit is extremely contingent or the parties have agreed to employ such an alternative. Id. at 161-62, 553 A.2d 20.
After discussing the detriments and benefits of these various distribution methods, the Court concluded:
Accordingly, we encourage use of the `immediate payment' approach. We recognize, however, that in some instances the `deferred distribution' or `partial deferred distribution' approach will be appropriate. Courts must decide which to use based on sometimes competing considerations: the elimination of strife between the parties, the ease with which the present value of the pension may be ascertained, and the ability of the employee spouse to pay the non-employee spouse the current cash value of the pension.
[Id. at 162, 553 A.2d 20.]
In Moore, finding the risk that the husband would not receive post-retirement cost-of-living increases was slight, the Court found it appropriate to include them in the present-value calculation. Id. at 165-66, 553 A.2d 20. Because any post-retirement cost-of-living increases attributable to that portion of the pension earned after the marriage are not subject to equitable distribution, the Court stated:
To determine the post-retirement cost-of-living increases subject to equitable distribution *1046 we apply what some courts refer to as the `coverture fraction.' [citations omitted]. The numerator of this fraction is the total period of time that the employee-spouse participated in the plan during his marriage. The denominator is the total period of time that the employee spouse participated in the plan, [citation omitted]. The fraction is then applied to post-retirement cost-of-living increases to determine the percentage of those increases that are attributable to the employee spouse's participation in the pension.
[Id. at 166, 553 A.2d 20.]
Here, the Pension Evaluators, Inc. report did include future post-retirement cost-of-living increases in its present-value calculation of defendant's pension and the coverture fraction was applied. Accordingly, the evaluation of defendant's pension followed the Moore analysis.
However, the present-value offset distribution method is only appropriate when there are sufficient other marital assets against which to offset the non-pensioner's equitable distribution interest in the pension, or sufficient income available to facilitate a reasonable buy-out of the non-pensioner spouse's interest. Whitfield v. Whitfield, 222 N.J.Super. at 50, 535 A.2d 986. Where there are insufficient assets or income to do so, the deferred-distribution method must be employed. The partial-deferred-distribution method is inapplicable because the future PERS benefit is virtually assured.
Here, the parties attempted to use a combination of both distribution methods. Since plaintiff desired full ownership of the jointly-owned marital domicile, defendant's present-value interest in the home was quantified as $28,500. In order to pay defendant for his interest in the home to effectuate the title transfer, it was necessary to translate plaintiff's interest in defendant's PERS pension into present-value dollars. The October 14, 1997 Pension Appraisers, Inc. report converts the value of defendant's pension into present-value dollars as of the date of filing of the divorce complaint, and then applies a coverture fraction to factor-out that portion of the value attributable to his PERS service prior to the marriage.
The adjusted present-dollar value of defendant's pension as of the date the divorce complaint was filed was $100,341.98. The parties recognized plaintiff was entitled to 50% of that value, or, approximately $50,170.99. It was against this amount that defendant's $28,500 interest in the marital domicile was offset. We calculate that left plaintiff with a present-value interest in defendant's pension of approximately $21,670.99, which equates to approximately twenty-two percent of defendant's present-dollar actuarial value of the coverture portion of the pension. The issue was how to distribute that remaining twenty-two percent interest to plaintiff. As there were no remaining assets against which to offset its present value and insufficient income to effectuate a reasonable buy-out, the parties elected to effect that distribution through a QDRO.
The motion judge accepted defendant's position that plaintiff be distributed twenty-two percent of the accrued-value monthly pension benefit of defendant based upon the assumptions contained in the present-actuarial-evaluation analysis in the October 14, 1997 Pension Appraisers, Inc. report. This was error, since it resulted in an improper mixture of two separate and distinct evaluation and distribution methods by valuing the pension in present-day dollars and then delaying distribution to a date more than ten years into the future. Converting the pension interest to present-value dollars is done for the express purpose of present-value distribution, not a deferred distribution of present-value dollars. We specifically disapproved of this approach in Whitfield, stating:
We take this opportunity to note one variation on the offset distribution method which we specifically disapprove: to assign a present value to the pension at the time of the divorce; calculate the spouse's share based on that present value, and defer distribution until the pension is received. Such an approach is indefensible. The only reason for discounting to present value is to justify the payment in present dollars of a sum of money which is not due, if at all, until some time in the future.

*1047 Obviously, if distribution is deferred until that future date, discounting is unnecessary. The actual sum of the pension received is then to be shared, not some past value to which the spouse had not had access in the interim. As it would be unjust to require the pensioner to pay a full share of a future entitlement at the time of the divorce without discount, so it would be unthinkable to require the pensioner's spouse to defer receipt of an equitable share of the pension until a future date but reduce that entitlement to its value as of the time of the divorce. Simply put, future benefits should not be paid in present dollars without a discount and present benefits should not be discounted to the value of past dollars.
[Whitfield, 222 N.J.Super. at 51-52, 535 A.2d 986.]
This reasoning is in accord with that of other jurisdictions. In In re Marriage of Kelm, 912 P.2d 545, 549 (Colo.1996), a defined-benefit pension valuation and distribution case, the husband argued that application of the "time rule" formula[2] improperly permitted the wife to share in his enhanced pension benefits attributable to his post-dissolution efforts and in benefits calculated on the basis of his post-dissolution earnings. In rejecting the husband's argument, the Colorado Supreme Court stated, in relevant part:
Husband's attempt to freeze the value of the pension at the time of dissolution and at the same time reap the rewards of deferred distribution is patently unfair to the wife, who must wait to receive her share. Similarly, husband's proposed present day valuation of his pension based upon his continued employment until the thirty-year mark is irrelevant if the deferred distribution method is used.
[Id. at 550.]
We are in accord with this reasoning. See also Bishop v. Bishop, 113 N.C.App. 725, 440 S.E.2d 591, 596 (1994), and Pulliam v. Pulliam, 796 P.2d 623, 626 (Okl.1990), reaching similar results.
Defendant contends that under Hayden, it would be inequitable for plaintiff to receive twenty-two percent of his retirement benefit because that allowance will be calculated based upon his last three years' salary, improperly allowing plaintiff to share in his future salary increases. Defendant's reliance on Hayden is misplaced.
In Hayden, the husband was age forty-three and enrolled in the State Police Retirement System (N.J.S.A. 53:5A-1 to -47) and had accrued 17.74 years of service in his retirement plan. Hayden, 284 N.J.Super. at 421, 665 A.2d 772. He was expected to retire at age fifty-five, at which time he would be entitled to a pension amounting to two percent of his salary in his last year of employment, multiplied by the number of years of service. By retiring at age fifty-five, with over thirty years of service, defendant would qualify for a pension of approximately seventy percent of final compensation. Ibid. The wife's valuation expert determined the present actuarial value of the husband's pension at $188,290, including an estimated salary increase until retirement of 3.2 percent based on inflation and made no reduction for tax consequences or calculations for the husband's lack of Social Security benefits.[3]Ibid.
The husband's pension valuation expert determined the present actuarial value at $106,162.81, approximately $82,000 less, because his evaluation did not include future salary increases, and he also reduced the current pension valuation by $26,160.38, representing Social Security benefits the husband would have received had he been enrolled in Social Security. Id. at 421-22, 665 A.2d 772.
In Hayden, we decided the issue unaddressed in Moore of whether post-judgment, pre-retirement, salary increases should be included when performing a present actuarial valuation of a defined benefit pension plan. Moore dealt with future post-retirement cost-of-living *1048 pension benefit increases, where the Court ruled they were subject to equitable distribution. 114 N.J. at 151, 553 A.2d 20. In Hayden, we determined post-judgment, pre-retirement salary increases should not be included, stating, in relevant part:
Alternatively, an industry or governmental unit may ostensibly grant a cost-of-living increase, irrespective of the merit of the employees' collective efforts. We are told that historically such increases have been given to the State Police and some other public employees. Yet to insure even these benefits, the bargaining agent of the public employees trades off other benefits such as increased raises based upon years of service, merit increases or the like. With each year's contract, a new balance is struck. Thus, the employee's post-divorce efforts, although on a collective basis, have occasioned even a regular cost-of-living increase. We, therefore, reject the inclusion of anticipated post-divorce, pre-retirement cost-of-living increases in valuing defendant's pension.
[Hayden, 284 N.J.Super. at 424, 665 A.2d 772.]
The pension evaluations completed in Hayden were for purposes of determining the present actuarial value of the husband's pension for purposes of immediate asset offset and current payment in present-value dollars.
Here, while the present actuarial value of defendant's pension was needed for an offset, in present-value dollars, of a portion of plaintiff's interest in his PERS pension in return for ownership of the marital domicile, distribution of the remaining twenty-two percent interest of plaintiff in that portion of the pension accruing during coverture was deferred until defendant's retirement in the year 2010. Hayden is a present-value distribution case. This case is a deferred-distribution case. As we noted in Whitfield, "future benefits should not be paid in present dollars without a discount and present benefits should not be discounted to the value of past dollars." 222 N.J.Super. at 52, 535 A.2d 986.
The deferred distribution of plaintiff's remaining interest in defendant's PERS pension, discounted to present-value dollars, is inequitable and inappropriate. Such a distribution ignores the fact plaintiff receives no interest or other enhanced value of her present-value interest, while defendant's interest in his pension continues to accelerate in value.
We are satisfied that application of the coverture fraction to the statutory formula through a QDRO in the form proposed by plaintiff is a fair and equitable manner of distributing to plaintiff her remaining twenty-two percent interest in defendant's PERS pension. As we recently noted in Reinbold v. Reinbold, 311 N.J.Super. 460, 710 A.2d 556 (App.Div.1998), in a deferred distribution of the non-employee spouse's interest, the longer the pensioner works, the larger the denominator of the coverture fraction,
thus reducing the non-employee spouse's percentage share and assuring the employee spouse the benefits of his or her post-divorce labors. In general, `the non-employee spouse will receive a decreasing percentage of an increasing benefit.' William M. Troyan, Pension Evaluation and Equitable Distribution, 10 Fam.L.Rep. 3001, 3007 (1983).

[Id. at 467, 710 A.2d 556 (emphasis supplied).]
Here, the parties agreed on a partial-deferred distribution method. Defendant forfeited his $28,500 interest in the marital home in exchange for a credit against plaintiff's interest in his deferred pension benefits. Instead of the pension benefits being divided at fifty percent, the parties agreed plaintiff would receive twenty-two percent of defendant's pension benefits which accrued during coverture up until the date the divorce complaint was filed.
Defendant explains his pension plan is a "defined benefit" plan which is not based on contributions placed into the plan. Defendant states his pension payout benefit will be calculated based on the average of his final three years salary with the State. We note that while his pension will likely be calculated on his last three years' salary, N.J.S.A. 43:15A-6h defines "final compensation" as the three highest-salaried years. Defendant expects to retire in the year 2010. He argues *1049 the court in Marx v. Marx, 265 N.J.Super. 418, 627 A.2d 691 (Ch.Div.1993), recognized the fact that a defined benefit pension plan is not calculated by the accumulation of an employer's contributions into the plan and that the court only used a coverture fraction because the parties in that case did not provide an alternative method to calculate the employee spouse's deferred annual retirement benefit as of the date the complaint was filed. Defendant asserts the plaintiff in Marx will receive more than her appropriate share of her former husband's pension because she will receive post-divorce increases of his pension value as a result of post-divorce salary increases. In contrast, defendant argues in this matter his pension expert, Pension Appraisers, Inc., has provided an appropriate method for computing his deferred monthly retirement benefit as of the date the complaint was filed. We disagree. The present actuarial evaluation of defendant's PERS pension was completed to allow the parties to factor-out a portion of plaintiff's interest in defendant's pension equal to $28,500 to determine the appropriate percentage value of plaintiff's remaining interest.
Application of the coverture fraction, applied at the time the benefits convert to pay status at retirement, will assure defendant maintains the fruits of his post-divorce labor. When the denominator of the coverture fraction increases with the increasing number of years defendant is enrolled in the PERS plan, a lower coverture fraction is used to compute plaintiff's twenty-two percent interest. Reinbold, 311 N.J.Super. at 466-67, 710 A.2d 556.
This holding is not contrary to other case law ruling that post-divorce, pre-retirement increases in salary as a result of the efforts of one spouse are not subject to equitable distribution. Moore, 114 N.J. at 158, 553 A.2d 20; Ryan v. Ryan, 261 N.J.Super. 689, 619 A.2d 692 (Ch.Div.1992). In a QDRO, the post-divorce, pre-retirement earnings are not distributed; rather, they simply form the basis for one of the factors used to perform the statutory calculation yielding the pension allowance. Application of the coverture factor prevents distribution to plaintiff of defendant's post-divorce, pre-retirement earnings. Reinbold, 311 N.J.Super. at 467, 710 A.2d 556. As noted by the motion judge, under Moore, 114 N.J. at 151, 553 A.2d 20, post-retirement cost-of-living increases attributable to the portion of the pension earned during coverture are distributable and should be so reflected in the QDRO.
III
In summary, this case involves a hybrid of the two basic methods of distributing the interest of the non-pensioner spouse, where a portion of that interest is distributed at the time of entry of the divorce judgment and a portion is distributed at the time the pension goes into pay status. We rule that the portion distributed at the time of divorce, through an offset against another asset or through a cash buy-out, must be valued using the present actuarial valuation method, reducing the future value of the pensioner's interest to present-value dollars. The deferred distribution of the remaining portion of the non-pensioner spouse's interest must be valued using a coverture fraction, multiplied by the non-pensioner spouse's percentage interest in the pension, and then multiplied by the amount of the pension benefit. Further, in accordance with the holding in Moore, 114 N.J. at 151, 553 A.2d 20, future post-retirement cost-of-living increases, limited to those attributable to the portion of the pension earned during the marriage, are distributable to the non-pensioner spouse in an amount equal to her percentage share at the time of the deferred distribution.
Reversed and remanded for entry of a QDRO consistent with these rulings. We do not retain jurisdiction.
NOTES
[1] The only figure quantified in this formula at the time of divorce is the number of years defendant was enrolled in PERS during coverture. In a deferred-distribution QDRO, the total years enrolled in PERS and the pension allowance can only be determined at the time of retirement.
[2] The "time-rule" formula incorporates a "coverture fraction," which comprises a numerator, the length of time of creditable service in the pension system during the marriage, over the denominator, the length of total creditable pension service. The coverture fraction is then divided, usually in half, to reflect the division of the pension benefits attributable to the marriage.
[3] PFRS members are not participants in the Social Security system.