822 A.2d 630 (2003)
360 N.J. Super. 240
Dale Eagan CLAFFEY, Plaintiff-Appellant,
v.
Daniel CLAFFEY, Defendant-Respondent.
No. A-6632-00T2.
Superior Court of New Jersey, Appellate Division.
Submitted January 29, 2003.
Decided May 19, 2003.
*633 Carton, Arvanitis, McGreevy, Argeris, Zager & Aikins, attorneys for appellant (Stephen C. Carton, Asbury, on the brief).
Pandolfe, Shaw & Rubino, attorneys for respondent (Charles F. Shaw, III, on the brief).
Before Judges KESTIN, FALL and WEISSBARD. *631
*632 The opinion of the court was delivered by FALL, J.A.D.
This matrimonial appeal illustrates the special problems posed by the equitable distribution of a defined benefit pension plan where there are no available survivor benefits, and the pensioner spouse has a significant alimony obligation to the non-pensioner spouse. Plaintiff Dale Eagan Claffey appeals from certain provisions of the final judgment of divorce, as later modified during a limited remand, that provide security for the potential termination of her deferred-distribution share of the defined benefit pension plan of defendant Daniel Claffey in the New Jersey Police and Firemen's Retirement System (PFRS). Plaintiff also appeals from the manner of distribution of her equitable share in defendant's deferred compensation fund. The following factual and procedural history is relevant to our resolution of the issues posed in this appeal.
*634 The parties were married on October 1, 1983. No children were born of the marriage; however, plaintiff had three children from her prior marriage and defendant had five children from his prior marriage. On September 10, 1998, plaintiff filed a complaint for divorce, alleging acts of extreme cruelty.
Trial of the divorce action commenced in the Family Part on January 19, 2000. However, prior to completion of trial, the parties reached an agreement concerning alimony that was ultimately embodied in an order entered on March 7, 2000, under which defendant agreed to pay to plaintiff the sum of $450 each week in permanent alimony, based upon plaintiff's 1999 gross earnings of $15,147.23 and defendant's 1999 gross earnings of $81,943.92. The order provided that alimony would terminate, inter alia, upon the death of defendant.
The trial continued on the remaining issues and concluded on January 27, 2000. The trial judge issued a written decision on those issues on June 19, 2000.[1] Although a form of final judgment purportedly incorporating the court's rulings was submitted to the court for entry, the parties were unable to agree on its form. On September 28, 2000, the court conducted a hearing concerning the wording of the final judgment focusing on those portions of the court's decision providing security for the continued support of plaintiff in the event of defendant's death, and the equitable distribution of defendant's pension. It is the interrelationship of those two issues that forms the main thrust of this appeal. In addressing those issues at the September 28, 2000 hearing, the trial judge stated, in pertinent part:
I understand [plaintiff counsel's] arguments. The framing of that portion of the decision was not a mistake. At least it was not a mistake as far as what I intended. Whether it's a mistake under that law is a different issue.
... I'm relying upon the [pension] appraiser's report.
And basically, I used the report which was ... P-20.[2] My specific intent was to do exactly what that says. And it may be a mixing of apples and oranges, but that's what my intent was because as I understood it based on the testimony before me, [plaintiff's] equitable distribution [portion] of [defendant's] pension was that $171,000 figure approximately.
Everyone recognized it could not be immediately ... distributed. I also took into consideration all the other testimony as far as financial ability to provide more security.
The issue as to whether or not, in effect, the failure to choose a survivorship benefit under the pension, should be held against [defendant]. And also the issues with regard to his wanting to, in addition to all of his obligations under the court's decision, also provide for his five ... children in the event of his demise particularly his one son, Joseph, who has substantial problems that we need not go into right now.
And I took all of that into consideration in making my decision that she would, in effect, receive the value of the pension as set out in P-20, and that because of the inability to pay it out immediately, that that would be based *635 on the arguments of counsel, QDRO'd recognizing that there is no survivorship benefit, it's a double-edged sword.
If he were to die a week after retirement, she would not receive any further pension payments. If he lived ten years beyond the tables for life expectancy, and the $171,000 is paid out prior to that time, then in effect, yes, an argument could be made that she received less than she wanted to or thought she was entitled to.
But that portion of the decision was not a mistake. The ruling was that she was entitled to $171,000 and I was concerned about protecting that sum in fashioning the additional security. Based on that decision, the language was also added for the possibility of a reduction in that security as the payments are made out.
That was my intent. It wasn't a mistake. I think it's appropriate if a higher court determines that that's not the way pensions are to be dealt with, then so be it. And then we'll have to look at it again....
At the September 28, 2000 hearing, counsel for the parties agreed to obtain additional information from the pension expert concerning the availability of benefits in the event of defendant's death prior to retirement, and to arrange for preparation of an appropriate form of a qualified domestic relations order (QDRO). However, thereafter, the parties were still unable to agree to the form of final judgment.
On June 29, 2001, the court conducted a further hearing and made certain rulings concerning the security and pension issues, and the distribution of defendant's deferred compensation plan. With respect to the pension, the judge stated, in pertinent part:
... [Counsel for defendant] submitted... his proposed form of judgment. [Counsel for plaintiff] objected to it[.]...
There was an additional letter from [counsel for plaintiff] ... wherein he referred to a recent Appellate Division decision, [Linek v. Korbeil, 333 N.J.Super. 464, 755 A.2d 1229 (App.Div.2000)], and argued again, as he had throughout the entire trial and the post trial hearing and correspondence going back and forth that the court's calculation of the value of [plaintiff's] interest in [defen-dant's] retirement was incorrect.
After having received that letter, having read the case, having received [counsel for defendant's] response in his letter..., I held a telephone conference call..., and as a result of that conference call, I came to the conclusion that [counsel for plaintiff] was correct ..., and that I would have to change the portion of the court's decision on the calculation of [the] present value of that pension benefit. And instead, in complying with Linek, which incorporated the older Supreme Court decision [Kikkert v. Kikkert, 88 N.J. 4, 438 A.2d 317 (1981)], [I] determined that the awarding of $171,113.33 was inappropriate. That what I had to do was award one-half of the coverture fraction of the defendant's pension.
* * * * * *
The balance of the changes [in the final judgment], again, deal with [counsel for plaintiff's] argument for the security since [defendant] has not retired. They don't know when he's going to retire. And ... [i]f he were to die prior to retiring, since there is no survivor benefit, [plaintiff] would get nothing.
There was an ongoing dispute about whether or not [a] certain form of security and how much security should be put in place. I disagree again with *636 [counsel for plaintiff] for all the reasons previously placed on the record. That there should be permanent life insurance or some other form of security.
I recognize that the vehicle that I set up at the time of making my decision of the $171,000 life insurance prior to his retirement should remain. The language in the judgment indicates he shall be required to maintain life insurance in the minimum initial sum of $170,000 upon his retirement naming plaintiff wife as the beneficiary.
I'm just adding in that, since we know that Mr. Troyan is going to have to recalculate things, the following additional language so that it will be, "or such other sum calculated by William Troyan if it can be to protect the value of plaintiff's share of defendant's pension."
So that basically if, as a result of the court's decision of the fifty percent of the coverture value of the defendant's pension, it turns out that it's more than $170,000 that can be calculated, there should be appropriate insurance coverage for that.
The parties had agreed that until retirement there would be $171,000. After, there would be an initial sum of $170,000, and then we got into the reduction procedure when payments were made. I recognize in light of not being able to make a fixed present value determination, the scheme that I put in place doesn't work as well. But I think it's better than nothing.
I disagree with the fact that there should be a specific life insurance benefit payable to [plaintiff] in the full amount of $170,000 at any time after his death. I recognize that no one really can calculate what that value is because we don't know how long [defendant] will live; how long the pension payments will be made.
If someone could calculate that specifically, I would consider the reduction procedure that I put into place. But I'm satisfied that that gives [plaintiff] some protection on the benefit that she would receive taking into consideration that the bottom line is that if he dies, there is no further benefit and based on the decisions that I made during the course of the trial, in the opinion and my disagreement with [counsel for plaintiff], that there would have to be protection of that asset that might or might not come into play since [defendant] chose not to have a survivor's benefit.
That is not, as far as I'm concerned, sufficient grounds to require the permanent non-reduced security that I've set up in the agreement. For all of those reasons, I am going to sign the form of judgment with the amendments noted that was submitted by [counsel for defendant.]
The court then executed the form of final judgment of divorce, which provided, in relevant part:

II. EQUITABLE DISTRIBUTION
a. Pensions. The parties agree that the Defendant husband's pension, of which the Defendant is a participant in with the New Jersey Police and Firemen's Retirement System, shall be distributed through a Domestic Relations Order (DRO). Defendant husband shall be required to execute a DRO for the value that [plaintiff] is entitled to pursuant to Kikkert v. Kikkert. That is, she is entitled to one/half of the [coverture] fraction of defendant's pension, minus a proportional share of the tax imputed value of contributions post 1987. Defendant husband's counsel shall be responsible for the preparation of any necessary *637 documents to accomplish the distribution. In this regard, he may make use of a specific service to prepare such documents, such as William Troyan, Inc. Until the retirement of the Defendant, he shall maintain $171,000 of life insurance with the Plaintiff as the beneficiary.
In order to protect Plaintiff wife's distributable value of Defendant's pension, in light of the lack of survivorship benefits, he shall be required to maintain life insurance in the minimum initial sum of $170,000.00, or such other sum calculated by William Troyan (if it can be) to protect the value of plaintiff's share of defendant's pension, upon his retirement, naming Plaintiff wife as the beneficiary. The insurance may be in whatever form desired by the Defendant (term, whole life, variable life, etc.). In lieu of the purchase of life insurance, Defendant may secure Plaintiff's portion of the pension by placing a mortgage, with no interest, on his Pine Brook Drive residence in the Township of Neptune. The language of the Mortgage shall be agreed to by the parties' attorneys. It is the intent of the Court that the life insurance or mortgage amounts be periodically reduced to evidence the payments received by Plaintiff after Defendant's retirement, during his lifetime. It is the intention of the court to include as defendant's pension any disability pension or retirement benefit that can be awarded to the defendant, or which he may be entitled, in lieu of receiving defendant's pension.
As to Defendant's interest in Plaintiff's pension, the Court determines that Defendant's fifty percent (50%) share in her pension ($7599.22) shall be awarded to him but shall be offset against the wife's share of the cash surrender value of present policies owned by the husband Defendant in the value of $6,822.00. In other words, the two will offset each other.
b. Deferred Compensation. Defendant Husband has a Copeland Deferred Compensation Plan which is subject to equitable distribution. The [Defendant] husband shall take the necessary steps to effectuate the distribution to the Plaintiff of her share of the deferred compensation account in the sum of $24,968.04 minus any income taxes generated by means of the early distribution. Both parties, if they wish, may agree to the distribution of the Copeland Fund by a [QDRO]. If this is done, Defendant shall be responsible for payment of preparation of any necessary documents.
After reviewing that portion of the final judgment pertaining to the distribution of defendant's PFRS pension, Peter J. Gorman, Executive Assistant in the Division of Pensions and Benefits sent a letter to plaintiff's counsel dated July 17, 2001, stating, in pertinent part:
Please be advised that I have reviewed the contents of the court order that accompanied your correspondence but unfortunately must inform you that we cannot implement such request for equitable distribution of [defendant's] pension account. We do not have an actuarial section within the Division and therefore cannot calculate the imputed value of post 1987 contributions. Also, we cannot implement provisions that request a percentage withholding coupled with a specific dollar amount to be deducted from that percentage.
I am enclosing a copy of a sample sheet that reflects the type of provisions that have appeared within court orders that we have accepted for implementation. Since our records indicate that [defendant] is still an active employee, may I suggest that you review the wording of *638 Item "C" within the attached sample sheet.
Regarding those portions of the attached order concerning death benefits, please be advised that we do not have the authority to implement or guarantee the implementation of irrevocable designations of beneficiaries.
In a subsequent letter to plaintiff's counsel dated July 25, 2001, Mr. Gorman further advised, in pertinent part:
This is to confirm that we do not implement such "net after tax" withholdings concerning matrimonial court orders. If such withholdings involve equitable distribution withholdings, we can only implement a gross amount indicated within the court order. Any such equitable distribution withholdings received by the alternate payee will be fully taxable to him or her....
On August 13, 2001, plaintiff filed a notice of appeal from those portions of the final judgment distributing plaintiff's share of the value of defendant's pension and deferred compensation plans. On plaintiff's application to settle the record on appeal, an order was entered in the Family Part on September 21, 2001, determining that the transcript of the trial was not necessary to determine the points raised on appeal by plaintiff. In that order, the trial court enumerated those items necessary to be submitted to this court to properly evaluate and determine the issues on appeal.
After a pre-argument conference before the Civil Appeals Settlement Program on October 12, 2001, we entered an order on October 15, 2001, temporarily remanding the matter to the Family Part for the limited purpose of permitting plaintiff to file a motion for relief from the provisions of the final judgment. Plaintiff's motion for reconsideration was argued in the Family Part on December 4, 2001.[3]
On January 7, 2002, the court entered an order that amended the first portion of Article II(a) of the final judgment concerning distribution of defendant's pension to read, as follows:
a. Defendant's Pension.
The Defendant is a participant in the New Jersey Police and Firemen's Retirement System, hereinafter referred to as "Defendant's Pension." The Plaintiff is awarded an equitable distribution interest of fifty percent (50%) of the coverture portion of the Defendant's Pension that shall include the distribution to the Plaintiff of the entirety of any and all pre-retirement death benefits of the Defendant's Pension in the event of the Defendant's death prior to retirement. It is the intention of this Court to include as the Defendant's Pension any disability pension or retirement benefit that may be awarded to the Defendant, or to which he may be entitled, in lieu of receiving the Defendant's Pension.
The Plaintiff and the Defendant shall employ William Troyan, Inc. to prepare a Domestic Relations Order to implement this portion of the Court's decision. Hereinafter, the Domestic Relations Order shall be referred to as "DRO." Within thirty (30) days from the date of this Order, the Defendant shall furnish to William Troyan, Inc. all facts and documents necessary for William Troyan, Inc. to prepare the DRO and provide for the implementation of same. In preparing the DRO, William Troyan, Inc. shall resolve any uncertainty or ambiguity in favor of the Plaintiff being entitled to fifty percent (50%) of any and all of the Defendant's Pension that was acquired during the marriage, namely, from the *639 date of their marriage through the date that the Complaint for Divorce was filed. This shall be known as the marital or coverture share. The form of the DRO prepared by William Troyan, Inc. will be subject to approval of the Plaintiff's and Defendant's attorneys, so as to insure that the intention of this Court is complied with. The fee of William Troyan, Inc. shall be paid equally by the Plaintiff and the Defendant.
In the event that the defendant dies prior to the entry of the DRO, this Court shall and does hereby recognize the terms set forth in this Order as avalid Domestic Relations Order.
The plaintiff's application to modify the remaining portions of Article II(a) of the final judgment, concerning the use of life insurance or a mortgage to secure plaintiff's share in defendant's pension, was denied, and the court specifically required defendant to comply with the obligation contained in the final judgment to maintain insurance upon his life in the amount of $171,000, naming plaintiff as beneficiary. Defendant was required to furnish plaintiff, within ten days, "written confirmation from the life insurance company and/or the New Jersey State Division of Pensions and Benefits confirming that the plaintiff is designated primary beneficiary of $171,000 of life insurance upon defendant's life or death benefits payable upon his death." The January 7, 2002 order also denied plaintiff's application to amend the final judgment to require that plaintiff's interest in defendant's Copeland Deferred Compensation Plan be distributed to her through use of a QDRO.
On October 9, 2002, the trial court entered an order directing that an August 1, 2002 letter from William Troyan, Inc. to both counsel concerning the pension distribution issue be made part of the record on appeal. In that letter Mr. Troyan stated, in pertinent part:
... It appears from the Order dated January 7, 2002 that the former Wife is to receive her portion of the Police and Firemen's Retirement System of New Jersey pension pursuant to the "Marx" formula allocation.[4] In other words, she is to receive 50% of the marital portion of the actual benefits payable when Mr. Claffey retires. If our interpretation is correct there is no way we can calculate the amount of life insurance needed to protect the former Wife's share of Mr. Claffey's benefit since the benefit cannot be calculated until Mr. Claffey retires. To calculate the amount of insurance needed to protect the Wife's share subsequent to retirement we would have to know the actual retirement benefit and also the date that Mr. Claffey intends to retire.
On appeal, plaintiff presents the following arguments for our consideration:
POINT I
THE TRIAL COURT INCORRECTLY FORMULATED LIFE INSURANCE PROVISIONS INTENDED TO (A) ASSURE DUE COMPLIANCE OF THE DEFENDANT'S MARITAL OBLIGATIONS TO THE PLAINTIFF, AND *640 (B) ENSURE THAT THE PLAINTIFF RECEIVES THE MARITAL BENEFITS TO WHICH SHE IS ENTITLED.
POINT II
THE PLAINTIFF IS ENTITLED TO HAVE HER MARITAL SHARE OF THE DEFENDANT'S COPELAND DEFERRED COMPENSATION PLAN DISTRIBUTED TO HER IN A QUALIFIED DOMESTIC RELATIONS ORDER.

I.
Plaintiff argues that because defendant's PFRS pension does not provide a survivor's benefit, she is entitled to security that will protect her against the potential loss of her equitable distribution interest in defendant's pension in the event of defendant's death. Specifically, she asserts that she will need a flow of income that will enable her to continue to maintain a reasonable lifestyle. She states that her meager income, coupled with failing health due to numerous medical conditions, will reduce her ability to support herself.
Plaintiff contends that the life insurance provisions contained in the final judgment are inadequate. Plaintiff notes that the life insurance benefit of $171,000, pre-retirement, and then $170,000, post-retirement, with periodic reductions "to evidence the payments received by Plaintiff after Defendant's retirement, during his lifetime[,]" is flawed because it was calculated based upon the court-determined fifty-percent share of plaintiff in the present actuarial value of defendant's pension. Because that value is a discounted present value that plaintiff would not receive until a future date in the form of deferred periodic payments, plaintiff contends the amount of life insurance set by the court as security has no relationship to its intended purpose.
Our analysis of this issue begins with an examination of certain fundamental principles. That portion of a pension legally or beneficially acquired by either party during marital coverture is subject to equitable distribution. Kikkert, supra, 88 N.J. at 5, 438 A.2d 317.
There are three separate methods of effecting an equitable distribution of that portion of a pensioner spouse's interest in a defined-benefit pension plan: (1) a present-value offset distribution; (2) a deferred-distribution; and (3) a partial deferred-distribution award. See La Sala v. La Sala, 335 N.J.Super. 1, 9, 760 A.2d 1122 (App.Div.2000), certif. denied, 167 N.J. 630, 772 A.2d 932 (2001); Risoldi v. Risoldi, 320 N.J.Super. 524, 537-38, 727 A.2d 1038 (App.Div.), certif. denied, 161 N.J. 335, 736 A.2d 528 (1999). The method selected for distribution of the non-pensioner spouse's interest dictates the appropriate method to value that share. Risoldi, supra, 320 N.J.Super. at 527, 727 A.2d 1038.
When the present-value distribution method is utilized to distribute the non-pensioner spouse's interest in the pension, the court must determine the present value of future benefits, also known as the present actuarial value of the pension. Use of that valuation method involves calculations based upon the assumption that the pensioner spouse terminated his or her participation in the pension plan as of the date of filing of the complaint for divorce, and further assumptions of the final average salary of the pensioner, the date at which the pensioner will retire, and various assumed interest rates, mortality tables, cost-of-living adjustments and other factors to determine the present value of annuities for the type of plan being valued. Id. at 528-29, 727 A.2d 1038. *641 In a present actuarial valuation, "the pension benefit is valued as of the [assumed] date of retirement and then discounted to determine present value." Menake v. Menake, 348 N.J.Super. 442, 448, 792 A.2d 448 (App.Div.2002). It is, in essence, a hypothetical value as of the date of the divorce complaint. Id. at 449, 792 A.2d 448. "Converting the pension interest to present-value dollars is done for the express purpose of present-value distribution, not a deferred distribution of present-value dollars." Risoldi, supra, 320 N.J.Super. at 540, 727 A.2d 1038.
Under this method, the non-pensioner spouse receives present value of a future interest, offset against the interest of the pensioner spouse in another asset subject to equitable distribution. The most common example is where the marital domicile is distributed to the non-pensioner spouse, and the pensioner spouse's interest therein is offset, or satisfied, by the non-pensioner spouse's interest in the pension, as measured by the non-pensioner spouse's equitable distribution share of the present actuarial value of the pension. Under this example, where the two are equal, the entire value of the marital domicile is distributed to the non-pensioner spouse, and the entire value of the pension is distributed to the pensioner spouse.
If the deferred-distribution method is employed to distribute the non-pensioner spouse's interest in the pension, then the court must calculate that interest based upon use of a coverture fraction. The coverture fraction represents the number of years during coverture that the pensioner spouse was a member of the pension plan, divided by the total number of years that the pensioner spouse was a member of that pension plan. The resulting coverture fraction represents that portion of the pension that is subject to equitable distribution. After the court determines the non-pensioner spouse's equitable distribution percentage interest in that coverture fraction, then a QDRO is used to distribute that interest to the non-pensioner spouse at the time of the retirement of the pensioner spouse. See Menake, supra, 348 N.J.Super. at 445-46, 792 A. 2d 448.
This coverture fraction "limits the [non-pensioner] spouse's entitlement to the duration of the marriage[,]" id. at 447, 792 A.2d 448, and "utilizes the value of the pension as of the date of retirement." Id. at 454, 792 A.2d 448. Although the valuation formula is determined and set by the QDRO at the time of divorce, the amount distributed is not determined in present dollars, but is paid in future dollars at the time of retirement in an amount determined by application of the aforesaid formula. This deferred-distribution method is actually distribution of an equitable share of a future contingent benefit, the contingency being survival of the pensioner spouse to retirement age. See Id. at 161, 792 A.2d 448.
Two other components of this deferred-distribution method bear brief discussion. When received, each party bears his or her own respective tax consequences attributable to his or her share of the monthly retirement benefit. Additionally, future cost-of-living increases in the monthly pension benefit are shared, or distributed, in accordance with his or her respective percentage shares of the coverture fraction. Moore v. Moore, 114 N.J. 147, 151, 553 A.2d 20 (1989).
The third, or hybrid method of distributing the non-pensioner spouse's equitable interest in the pension is the partial-deferred distribution method, which "would entail a current valuation award of the appropriate share of the non-contingent portion of a pension and a deferred *642 distribution of the share of the contingent benefits if and when they are paid to the employee spouse." Ibid. "This method of distribution would allow the non-employee spouse immediate enjoyment of part of his or her equitable distribution award and yet effectively protect his or her right to share future contingent benefits." Ibid.
Regardless of the distribution method employed, a court cannot assign a present value to the pension at the time of divorce and then defer distribution of that value until the pension is received. Whitfield v. Whitfield, 222 N.J.Super. 36, 51-52, 535 A.2d 986 (App.Div.1987). This is so because "[t]he only reason for discounting to present value is to justify the payment in present dollars of a sum of money which is not due, if at all, until some time in the future." As we further explained:
Obviously, if distribution is deferred until that future date, discounting is unnecessary. The actual sum of the pension received is then to be shared, not some past value to which the spouse had not had access in the interim. As it would be unjust to require the pensioner to pay a full share of a future entitlement at the time of divorce without discount, so it would be unthinkable to require the pensioner's spouse to defer receipt of an equitable share of the pension until a future date but reduce that entitlement to its value as of the time of the divorce. Simply put, future benefits should not be paid in present dollars without a discount and present benefits should not be discounted to the value of past dollars.

[Ibid. (emphasis added).]
Accordingly, a pensioner's attempt to freeze the value of the pension at the time of divorce, and at the same time reap the benefits of a deferred distribution is patently unfair to the non-pensioner spouse, who must then wait to receive his or her share. Simply put, when the deferred-distribution method is used, a present actuarial vale of the pension is irrelevant. Risoldi, supra, 320 N.J.Super. at 541, 727 A.2d 1038.
Likewise, when the partial-deferred distribution method is employed,
[t]he deferred distribution of [the non-pensioner spouse's] remaining interest in [the pensioner spouse's] pension, discounted to present-value dollars, is inequitable and inappropriate. Such a distribution ignores the fact [the non-pensioner spouse] receives no interest or other enhanced value of [his or her] present-value interest, while [the pensioner spouse's] interest in [his or her] pension continues to accelerate in value.

[Id. at 543, 727 A.2d 1038.]
Where there are no assets other than the pension subject to equitable distribution, the determination of the value of the non-pensioner spouse's interest in the pension, and its distribution, must be deferred to the date of retirement. This is accomplished through entry of a QDRO, which directs the pension plan administrator to distribute, in accordance with the coverture fraction, a portion of the periodic pension benefit to the non-pensioner spouse. Assuming survival of the pensioner spouse to the date of retirement, the percentage to be so distributed and the amount of the periodic benefit is not known until retirement. Moreover, the total gross sum to be received by the non-pensioner spouse can only be measured by the life of the pensioner spouse, because the benefit terminates upon his or her death.
Here, through use of a QDRO, the PFRS may be required to pay a portion of defendant's monthly pension benefit directly to the plaintiff commencing with defendant's retirement. Cleveland v. *643 Board of Trs., 229 N.J.Super. 156, 550 A.2d 1287 (App.Div.1988). However, only the surviving widow of a pensioner, not his former wife, is entitled to the PFRS widow's pension. La Sala, supra, 335 N.J.Super. at 8, 760 A.2d 1122; Seavey v. Long, 303 N.J.Super. 153, 696 A.2d 102 (App.Div. 1997). Here, plaintiff is not entitled to a widow's pension in the event defendant predeceases her, nor is she entitled to survivor benefits. Therefore, at defendant's death after retirement, the amount of defendant's monthly benefit, payable by operation of a QDRO, will cease to be paid. If defendant dies during service, a life insurance benefit and a return of pension contributions is distributed to the defendant's named beneficiaries. La Sala, supra, 335 N.J.Super. at 8, 760 A.2d 1122. If defendant dies after retirement, defendant's named beneficiaries receive only the life insurance benefits. Ibid.
In an October 7, 1999 letter to plaintiff's counsel, the Division of Pensions and Benefits described the benefits available under defendant's pension, in relevant part:
All of our public employment retirement systems, including PFRS, are not covered by the federal ERISA laws. Therefore, we will not be setting up separate accounts for [plaintiff] and she will not be receiving any of the rights of a member of PFRS.
If [defendant] should die before retirement, the only benefits payable as a result of such death would be group term life insurance in an amount equal to three and one half times his base or contractual salary for the 12 months immediately preceding his date of death and the return of his net personal contributions to the PRFS. There are no monthly survivor's benefits payable to anyone unless the PFRS member is killed in the line of duty. A divorced spouse is not automatically entitled to any of these death benefits. We can only pay such death benefits to the person or persons designated by [defendant] on the most current, appropriate form within our files on the date of his death.
* * * * * *
Our records indicate that [defendant's] base or contractual salary for 1998 was $77,824. Thus, his group term life insurance coverage at that time was three and one half times that amount....
Defendant obtained a present actuarial value analysis of his PFRS pension from Pension Appraisers Inc. dated November 18, 1998. That appraisal "determined the present value of [defendant's] defined benefit by the PBGC Actuarial and Mortality Table Method as of September 11, 1998 to be $342,226.66." In the original version of the equitable distribution provisions of the divorce judgment concerning the pension, the court had concluded that plaintiff's equitable distribution interest in defendant's PFRS pension was the sum of $171,000, which was approximately fifty-percent of the present actuarial value of defendant's pension. The judgment then utilized the present actuarial value analysis completed by Pension Appraisers, Inc. to determine plaintiff's entitlement to $171,000, but then, because of the lack of assets to off-set that interest in defendant's pension, directed that a QDRO be used to effect distribution of that $171,000. The court expressed its intent that $171,000 be distributed to plaintiff as her interest in defendant's pension and then used a combination of the QDRO and life insurance coverage to assure that she would receive that amount, even if defendant died prior to her receipt of the $171,000.
This was clearly improper, because the court mixed two separate and distinct valuation and distribution methods by valuing the pension in present-day dollars, and *644 then delaying distribution to a date in the future. On the limited remand, the court corrected that error by providing for a deferred distribution of plaintiff's interest in defendant's pension. However, recognizing that the deferred benefit to be received by plaintiff would end if defendant died, the court elected to retain those provisions in the final judgment that attempted to secure plaintiff's interest in the pension, based upon her $171,000 interest in the present-day actuarial value, through a combination of life insurance and a mortgage on defendant's property providing for a total of $170,000 in security after defendant's retirement, with that "security" to be periodically reduced to the extent of pension payments made to plaintiff after defendant's retirement.
As we have previously noted, "[t]he evaluation and equitable distribution of pensions presents troublesome challenges to litigants, practitioners and judges in matrimonial cases." Risoldi, supra, 320 N.J.Super. at 531, 727 A.2d 1038. The difficulty of this task is compounded where, as here, there are no survivor benefits available under the pension plan; there are no assets to effect a present-offset value distribution; and the non-pensioner spouse is economically dependent upon the pensioner spouse for support.
A deferred distribution, under these circumstances, amounts to a contingency distribution dependent upon the survival of the pensioner spouse. Here, describing plaintiff's interest in defendant's pension in a more colloquial way, "when he gets, she gets; when he dies, so does her benefit." Since the benefit terminates at plaintiff's death, it is not an asset that can be part of plaintiff's estate. Because of its nature, plaintiff's equitable distribution interest in defendant's pension is nothing more than a contingent benefit that evaporates at the death of either party.
Even if the pensioner spouse survives to retirement and beyond, the retirement itself creates another potential problem for a dependent non-pensioner spouse. N.J.S.A. 2A:34-23(b) provides, in pertinent part:
When a share of a retirement benefit is treated as an asset for purposes of equitable distribution, the court shall not consider income generated thereafter by that share for purposes of determining alimony.
In Innes v. Innes, 117 N.J. 496, 500, 569 A.2d 770 (1990), the Supreme Court held "that payments generated by pension benefits that were previously equitably distributed are not `income' for purposes of reconsidering the pensioner's alimony obligations." Thus, where changed circumstances warrant modification of alimony due to, for example, a decrease in the supporting spouse's ability to pay because of retirement, that portion of the pension benefit equitably distributed may not be considered in the modified alimony calculus. Naturally, income from pension benefits earned after the filing of the complaint for divorce may be considered for purposes of alimony modification. Id. at 505, 569 A.2d 770.
We note, however, that in Innes the entire pension was treated as an asset for purposes of an immediate offset equitable-distribution award. Id. at 506, 569 A.2d 770. There, immediate value was received by the non-pensioner spouse. Here, there is no immediate benefit because the distribution was deferred and plaintiff was only distributed a contingent asset. We need not reach the interesting issue of whether N.J.S.A. 2A:34-23(b) and the holding in Innes would require a court to ignore, in a post-retirement alimony analysis, the amounts paid by the pension plan to each party that are attributable to that portion of the pension that was legally or beneficially *645 acquired during coverture, when the deferred distribution method is utilized.
Here, the issues presented to the trial judge were a mix of equitable distribution and alimony. Recognizing plaintiff's dependency, the clear and admirable intent of the trial judge was to provide plaintiff security for her receipt of pension benefits that she would lose in the event of defendant's death. In reality, the judge was properly concerned that upon defendant's death, plaintiff would be unable to adequately support herself, and would have no stream of income from the "equitably distributed" pension to assist her in that effort. However, in setting the amount of life insurance to provide plaintiff reasonable security, the judge measured those future benefits in discounted present dollars, and provided for periodic decreases in that security by the extent that the amount of periodic pension benefits received by plaintiff achieved the receipt of her share of the present actuarial value of the pension $170,000.
Although N.J.S.A. 2A:34-25 provides that alimony terminates upon the death of payer spouse, it also states that:
Nothing in this act shall be construed to prohibit a court from ordering either spouse to maintain life insurance for the protection of the former spouse or the children of the marriage in the event of the payer spouse's death.
Here, the parties agreed that an appropriate amount of spousal support needed to assist plaintiff in meeting her needs was the sum of $450 each week. Embodied in that agreement is a recognition of plaintiff's limited earning capacity, perhaps complicated by further circumstances relating, at least potentially, to her health. If defendant were to die before plaintiff, either before or after his retirement, both the alimony payment and the pension benefit would end. "Thus, the function of alimony can be maintained after the obligor's death by substituting insurance proceeds[.]" In re Estate of Roccamonte, 174 N.J. 381, 398, 808 A.2d 838 (2002). Life insurance policies or trusts are frequently included in final judgments of divorce as security for support obligations. Jacobitti v. Jacobitti, 135 N.J. 571, 574-75, 641 A. 2d 535 (1994); Schwarz v. Schwarz, 328 N.J.Super. 275, 286, 745 A.2d 592 (App.Div.2000); McCarthy v. McCarthy, 319 N.J.Super. 138, 146, 725 A.2d 32 (App.Div.1999). As the trial judge properly recognized, the circumstances before him reasonably required the establishment of some form of security.
Further recognition of this unquestionable interrelationship between alimony and equitable distribution is contained in the statutory provision requiring the court consider, inter alia, the equitable distribution of property when determining alimony, N.J.S.A. 2A:34-23(b)(10) and, in effecting equitable distribution, to consider, inter alia, the economic circumstances, income and earning capacity of each party. N.J.S.A. 2A:34-23.1(f) and (g). See also Conforti v. Guliadis, 128 N.J. 318, 324, 608 A.2d 225 (1992) (noting that the question of support is intimately related to the question of equitable distribution).
However, the method employed here by the trial judge to provide plaintiff security was tied to the interest of plaintiff in the present actuarial value of defendant's pension. As we have noted, that is an improper barometer because that interest reflects a future interest discounted to present dollars and is otherwise irrelevant in this distributive scheme. It would be equally inappropriate to attempt to link the amount of that security to the value of plaintiff's interest in the deferred compensation pension benefit, particularly since, as noted by Mr. Troyan's August 1, 2002 letter, it is not ascertainable until defendant's *646 retirement. Additionally, the retirement of defendant may, or may not, result in a modification of the alimony award.
The information currently available is the income capacity of each party; plaintiff's present entitlement to the sum of $450 each week in alimony; plaintiff's life expectancy; defendant's eligible and mandatory retirement dates; the potential, if not probable, modification of the alimony award at the time of defendant's retirement; the pre-retirement life insurance benefits of defendant through his employment and PFRS plan; the parties' eventual receipt of social security benefits; the financial circumstances of the parties; and other relevant information as derived from the trial testimony and evidence. These factors, as well as any additional relevant information should be considered by the trial court in determining, in the exercise of its discretion, an appropriate, fair and equitable amount of insurance coverage to be required as security for the continued and reasonable support of defendant in the event defendant predeceases plaintiff.[5] We also note that the trial court can order that defendant designate plaintiff as the beneficiary of all or a portion of his life insurance and pension contributions, which "would provide some protection for plaintiff should defendant die before retiring." La Sala, supra, 335 N.J.Super. at 12, 760 A.2d 1122. In addition:
Upon defendant's retirement, the amount of his death benefit from PFRS is reduced[.] ... Defendant has, however, the right to convert the difference... into private insurance. The conversion of insurance is automatic upon the payment of a premium, regardless of the health or age of the application. N.J.S.A. 43:16A-58. Thus, this could provide some measure of protection for plaintiff should defendant die during his retirement, whether or not the defendant has remarried.

[Ibid.]
We also note that it is perfectly reasonable to provide for the periodic reduction or review of the amount of that required security to reflect the diminishing need for it as the parties age, or circumstances otherwise change. Accordingly, we are constrained to remand the issue of security for an analysis consistent with this opinion.

II.
Plaintiff also argues that she was entitled to have her equitable distribution share of defendant's Copeland Deferred Compensation Plan distributed to her through a QDRO. After analyzing the record on appeal, and without the benefit of a complete trial record and decision, we can find no misapplication of discretion by the court in ordering an immediate distribution of this fund. Although not briefed or discussed, plaintiff may be able to retain tax-deferred status of the amount distributed to her through a rollover into an individual retirement account.
Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
NOTES
[1] The written decision of the judge has not been made a part of the record on appeal.
[2] The judge was referring to the November 18, 1998 report by Pension Appraisers Inc., which determined that the present actuarial value of defendant's defined pension benefit in his PFRS plan was $342,226.66 as of September 11, 1998.
[3] A transcript of the December 4, 2001 hearing is not contained in the record on appeal.
[4] This refers to the formula for allocation of the pensioner spouse's defined benefit plan in accordance with Marx v. Marx, 265 N.J.Super. 418, 428, 627 A.2d 691 (Ch.Div.1993), under which: (1) the total accrued benefit is determined when the non-pensioner supouse is permitted to move her or his share of the benefit to pay status pursuant to the plan requirements; (2)the plan administrator determines the coverture fraction and multiplies the total accrued benefit by the coverture fraction; and (3)the product of the total accrued benefit times the coverture fraction is divided in half in accordance with the non-pensioner spouse's equitable share.
[5] As we have noted, we have not been provided the benefit of the trial judge's written decision or other parts of the trial record; therefore, our review was limited to the information provided in the record on appeal. We do not suggest what result the trial judge should reach, or that the result reached was not equitable; we only note that the sole basis cannot be the hypothetical value of plaintiff's interest in the present actuarial value of defendant's pension as of the date of the filing of the divorce complaint.