88 A.3d 214

DAWN EVANS–DONOHUE, PLAINTIFF, v.
JOSEPH A. DONOHUE, DEFENDANT.

Superior Court of New Jersey
Chancery Division Camden County

Decided September 12, 2013.

*Michael C. Morris,* for plaintiff.

*John M. Makowski,* for defendant.

POLANSKY, J.S.C.

### *Introduction*

The trial in the above matter commenced on June 27, 2013, and concluded July 15, 2013. Plaintiff and defendant reached agreement on many of the issues presented, including limited duration spousal support, equitable distribution of assets with the exception of defendant's pension, life insurance, income calculation for purposes of determining child support, and counsel fees. The parties previously entered into a consent order addressing custody and parenting time for their child.

### Equitable Distribution of Defendant's Pension

*N.J.S.A.* 2A:34–23(h) requires the court to "effectuate an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them, or either of them during the marriage . . ." It is undisputed that defendant participated in a Public Employees' Retirement System ("PERS") pension through his employment with Pine Hill Borough and later Pine Hill Borough Utilities Authority. Defendant continues to be a participant in that pension plan. A portion of the pension was earned prior to the marriage, and a portion of the pension was earned during the marriage.

Defendant first began participating in the pension plan in or about 1992. The parties were married on August 12, 2000. The complaint for divorce was filed October 25, 2012. Accordingly, the marital coverture period would be the period between August 12, 2000 and October 25, 2012.

Plaintiff at the beginning of trial asserted that the marital coverture portion of the pension should be divided equally by a Qualified Domestic Relations Order ("QDRO"). She also asserted that defendant should be required to designate her as a survivor beneficiary under retirement option 4, which would provide her with a continuing benefit upon defendant's death. She argues that she should not be required to compensate defendant for any reduction in his pension resulting from her being designated as a survivor beneficiary.

Plaintiff in her written closing submission changed her position and now asserts that the court should follow the immediate offset method described in *Moore v. Moore,* 114 *N.J.* 147, 553 *A.*2d 20 (1989), and award her a cash payment for the present value of the pension, which plaintiff asserts would entitle her to a present value payment of $56,496.04, representing the pretax present value.[1] Plaintiff proposes that this sum be paid by awarding plaintiff the

---

[1] The testimony presented reflects that the net after-tax value of the marital coverture portion of the pension would be $54,120.93.

full Variable Annuity Life Insurance Company ("VALIC") deferred compensation account, which includes defendant's interest, and then awarding plaintiff additional weekly payments for the remaining asserted present value of the PERS pension. Plaintiff proposes that the remaining payments commence at the conclusion of the term for the payment of limited duration alimony.[2]

Defendant concedes that plaintiff is entitled to receive equitable distribution of that portion of his PERS pension and deferred compensation plan accumulated during the marriage. He objects to plaintiff's request that he be required to select a survivor benefit for plaintiff, which would reduce the amount of the pension defendant would receive upon retirement. He seeks to have the pension distributed utilizing the deferred distribution method. He asserts that he does not have assets to provide a present value offset distribution.

Plaintiff in her testimony asserted she was seeking deferred distribution of the PERS pension together with survivor benefits. She provided no further testimony to explain the reason for this request. Defendant testified that he cannot afford a reduction in his total pension benefit anticipated, and that such a reduction would negatively impact his standard of living and ability to pay his bills when retired. He claims to have been saving since the early 1990's for retirement. His current plan is to work until age sixty-five.

Lois Fried, a certified public accountant, testified via telephone by consent of the parties. She stated that defendant had contributed $31,130.18 into the retirement system as of the date of valuation.[3] Her report was based upon emails from counsel, which requested valuation of the pension under specific factual

---

[2] Pursuant to the agreement of the parties, plaintiff will receive limited duration alimony for a period of five years.

[3] The date of valuation is the date of filing of the divorce complaint, October 25, 2012. Fried utilized September 30, 2012, since no additional contributions had been made as of the date of valuation.

parameters. She based her valuation on the assumption that defendant would retire at the age of sixty and begin to receive his pension benefit at that age. There was no testimony during the trial, however, which would allow the court to conclude that there is a likelihood that this is an appropriate age of retirement at which to value the pension. Defendant testified that his current plan is to retire at age sixty-five. Plaintiff provided no testimony indicating that there were any discussions during the marriage which would suggest likely retirement at a different age.

■ Present valuation of the pension is relevant only where the court determines that a present value distribution of the pension is appropriate. *Claffey v. Claffey*, 360 *N.J.Super.* 240, 256, 822 *A.*2d 630 (App.Div.2003); *Risoldi v. Risoldi*, 320 *N.J.Super.* 524, 540, 727 *A.*2d 1038 (App.Div.) *certif. denied*, 161 *N.J.* 335, 736 *A.*2d 528 (1999). Where the court elects to utilize the deferred pension distribution method it is unnecessary to determine the present value of the pension.

■ The present value of the PERS pension was based upon a hypothetical question with specific facts regarding the number of years of service, age of retirement, and life expectancy assumed for purposes of valuation. The valuation was further based upon a discount rate selected by the expert. The court finds that the assumption utilized by the expert that the defendant will retire at the age of sixty is unsupported by the testimony. Because of that the court finds that Fried's testimony is insufficient to establish the present value of the marital coverture portion of the PERS pension.

Defendant testified credibly that he will need to go into debt over the next five years in order to pay his limited duration alimony obligation. He testified that he does not have the ability to continue making those payments beyond five years, since he expects to be in a position where he will be repaying monies borrowed to satisfy his spousal support obligation at the end of the five year period. This finding weighs heavily against a present value distribution.

■ The court concludes that it is not appropriate to utilize a present value distribution of the pension for two reasons. The court in *Claffey* cautioned that "where there are no assets other than the pension subject to equitable distribution, the determination of the value of the non-pensioner spouse's interest in the pension, and its distribution, must be deferred to the date of retirement." 360 *N.J.Super.* at 258, 822 *A.*2d 630. Here the testimony establishes that the marital estate does not contain sufficient assets to fund a present value distribution of the PERS pension. Additionally, the court finds insufficient testimony to make a factual determination regarding the present value of the pension. For these reasons the court concludes that it would not be appropriate to award a present value distribution of the pension.

### Deferred Distribution of the PERS Pension

■ Distribution of the PERS pension is in actuality a distribution of an equitable share of a future contingent benefit. *Id.* at 257, 822 *A.*2d 630. The contingency is the survival of the spouse with the potential right to receive a pension to and beyond the age of retirement. *Id.* at 257, 822 *A.*2d 630. If plaintiff and defendant were to remain married, and defendant were to die prior to retirement, plaintiff would receive nothing from defendant's pension. Under those circumstances defendant's estate would receive the return of monies contributed by defendant to the pension plan, along with any insurance benefits. Defendant's contributions to the pension plan for the period of his employment total $31,130.18. This is the only non-contingent asset which exists as part of the PERS pension plan. That figure includes both premarital contributions and contributions during the marriage. Any value of the pension above the marital coverture fraction of monies contributed to the pension fund remains a contingent asset.[4]

---

[4] The "coverture fraction" is the proportion of years worked during the marriage to the total number of years worked. *Barr v. Barr*, 418 *N.J.Super.* 18, 34, 11 *A.*3d 875 (App.Div.2011).

Since the court has determined that the present value distribution is not appropriate in this case, the court must determine whether defendant should be required to select a survivor benefit when he retires, which reduces his monthly pension payment but provides plaintiff with pension payments for her life. Fried testified that in most deferred compensation awards, a QDRO is prepared which leaves the denominator an open figure when determining the coverture fraction. The numerator would be fixed as the number of years from the date of marriage to the date of filing of the divorce complaint, which is commonly referred to as the marital coverture period. The denominator, which equals the total number of years worked, would be left open, and is dependent upon the age at which defendant retires. Fried indicated that it is not typical to draft a QDRO requiring a survivor benefit, and that this is not considered in most cases. She did testify, however, that it was something that could be done, and has been done on other occasions.

The court has determined that there are several factors which must be considered when evaluating whether a party is entitled to require that their former spouse elect survivor benefits as part of a pension plan where such benefits are available. The factors which must be considered include: (1) the length of the marriage; (2) the length of anticipated years of service in the pension plan; (3) the age and health of the parties; (4) the pension options available to the party participating in the pension plan; (5) the financial impact of alternate pension options on both parties; (6) the availability of a survival benefit and its impact on the benefit received; (7) the cash value of the pension should the spouse participating in the pension plan die prior to retirement; (8) the availability of other assets to fund retirement; (9) the financial circumstances of both parties; (10) the availability of life insurance to protect the contingent benefit; and (11) any other factors which may be relevant in the case. These factors must be addressed based upon the testimony and evidence presented at trial.

### 1. Length of the Marriage

The parties were married August 12, 2000. They separated on June 24, 2011. The divorce complaint was filed October 25, 2012. The coverture period at issue would be 12 years and 2 months.

### 2. Length of Anticipated Years of Service in the Pension Plan

Defendant began participating in the PERS plan in or about 1990. He is currently forty-five years old and anticipates working until age sixty-five. Retirement at age sixty-five is not mandatory, and he could work past age sixty-five if desired.

At the present time plaintiff has 21.5 years of service in the PERS pension system. The only testimony presented, indicating that he intends to retire at age sixty-five, would give him approximately forty-one years of service in the pension system. The parties' marriage at the present time represents 56% of the total years of service in the pension plan, but based upon the credible testimony of defendant would represent only 29% of the total period of service in the PERS pension plan at the anticipated time of retirement.

Where a high percentage of the total time in the pension plan occurs during the marriage, it is more appropriate to require a party to select a survivor benefit which provides payments to the former spouse for their lifetime even where the retiree predeceases their former spouse. Any reduction in the payment received by the party holding the pension as a result of the desire of the former spouse to receive a survivor benefit can be addressed by reducing the percentage of the marital coverture portion of the pension received by that spouse and providing for an unequal percentage distribution. This serves to protect the former spouse while at the same time reducing any penalty to the spouse earning the pension.

Where, as here, a significant portion of the pension entitlement has been earned prior to the marriage, and where a significant portion of the pension entitlement is to be earned subsequent

to the divorce, the equities mitigate against requiring the spouse earning the pension to select survivor benefits.

### 3. Age and Health of the Parties

Plaintiff is currently forty-two years old and defendant is currently forty-five years old. Both parties appear to be in excellent health. Neither party presented testimony indicating any medical impairment impacting their health or ability to work.

### 4. Pension Options Available

■ Although pretrial submissions contain information from the State of New Jersey, Department of the Treasury, regarding the pension options available, this information was not entered into evidence. The court takes judicial notice of the pension retirement options available which can be found at www.state.nj.us/treasury/pensions/pdf/factsheets/fact05.pdf (last visited Sept. 10, 2013). The various options with a survivor benefit reduce the amount payable to the retiree by anywhere from $150 per month to over $700 per month, depending upon the percentage level of benefit received by the survivor. The option sought by plaintiff would put the reduction in the benefit received by defendant at the upper end of this range.

### 5. Financial Impact of Alternate Pension Options

Defendant testified that the reduction required to his pension in order to fund a survivor benefit would significantly impact his ability to survive upon retirement. His income is relatively modest, and the anticipated pension benefit even at full value would fund a frugal lifestyle. No other testimony was provided relevant to this factor.

### 6. Availability of Survivor Benefit and Impact on Benefit Received

Multiple options are available for survivor benefits under the PERS pension system. The greater the benefit received by the

survivor upon the death of the retiree, the lower the benefit that will be received by the retiree during his life.

### 7. Cash Value of the Pension if the Pension Holder Dies Prior to Retirement

Here the total cash value of the pension is $31,130.18, based upon defendant's contribution into the retirement system. This valuation was calculated as of September 30, 2012. The marital coverture portion of this benefit would be 59.56%, or $18,541.14. One-half the marital coverture portion of the cash value would be $9,270.57.

This sum represents the only portion of the pension which is not a contingent asset. The remaining portion of the pension, and accordingly the remaining value of the pension, remains a contingent asset which will not exist if the spouse for whose benefit the pension is maintained dies prior to retirement.

### 8. Availability of Other Assets to Fund Retirement

The only liquid asset available to the parties in this matter is a deferred compensation account with a value at the time of the filing of the complaint of $21,852. Plaintiff asserts that the present value with increases in market value totals $25,495. The problem with this determination is that the valuation includes a $300 employer contribution post-filing of the complaint, and the total increase in value does not fully result from investment performance. Additionally even assuming that the entirety of this account represents marital property, it is woefully inadequate to fund a buyout of the asserted present value of the retirement benefit. Neither party possesses significant assets to fund living expenses during their retirement.

Plaintiff does possess a home, which she currently owns with no mortgage. She also possessed a premarital retirement account, which she liquidated. Additionally she possessed monies which were inherited, but those funds have been dissipated in a relatively short period of time by plaintiff. The home in which defendant resides has no equity. The mortgage equals the value of the

residence. Plaintiff will have greater assets to fund retirement than defendant once the marital assets are divided and distributed.

### 9. Financial Circumstances of Both Parties

Neither party is in a strong financial position. Plaintiff owns a home, which is an exempt asset. There is no mortgage on that home, and plaintiff has equity from this asset. No testimony was provided regarding the value of the home. Defendant after the divorce will own the former marital residence, which has equity of at most $10,000 based upon the Case Information Statement, but which based on trial testimony has no value in excess of the mortgage. Defendant's retirement assets will exceed plaintiff's retirement assets since a portion of the PERS pension and the deferred compensation account are premarital. Plaintiff will also have any remaining funds from her inheritance, which appears to have been mostly dissipated.

### 10. Availability of Life Insurance to Protect the Contingent Benefit

Both plaintiff and defendant have the ability to protect against the contingency of defendant predeceasing plaintiff through the purchase of life insurance. Both parties are of a relatively young age and in good health. These factors reduce the cost of life insurance, making such insurance more affordable.

### 11. Other Factors Deemed Relevant

Testimony at trial did not reflect any additional information relevant to the issue of whether defendant should be required to select survivor benefits through his pension at the time of retirement.

### *Application of Factors*

The court concludes that it would not be reasonable or equitable under the circumstances presented to require defendant to select survivor benefits under his pension at the time of retirement.

■ The marriage of the parties comprises just over half of defendant's time participating in the pension plan. Defendant's relatively young age is indicative of his likely participation in the pension plan for a significant additional period of time. Where the length of the marriage is equal or close to the length of participation in the pension plan after consideration of the anticipated age of retirement, it is more appropriate to require the selection of either survivor benefits or in the alternative life insurance to protect the interest of the non-retiree in the contingent asset which is the pension benefit. Where, as here, the marriage consists of only twelve of twenty years' participation in the pension plan, and where the only testimony in the case establishes that the marriage will likely represent less than one-third of the total time of participation in the pension plan, the retiree should not be required to select survivor benefits as a pension option. The equities of each situation must be considered based upon their own unique circumstance. Where the marriage comprises the majority of the period during which the retiree has participated in the pension plan, any reduction in the pension payment as a result of the desire of the former spouse to guarantee lifetime retirement benefits can be addressed by adjusting the percentage of the marital coverture fraction which is awarded to the spouse. This does not mean that where it is appropriate to award survivor benefits that the sole burden should fall upon one party or the other. Rather, consideration of the factors discussed above should be used to determine what if any deviation should be made from the percentage utilized to allocate other assets being equitably distributed under these circumstances.

## Cause of Action

■ The court finds that the jurisdiction requirements have been met and that each party has established a cause of action for divorce on the grounds of irreconcilable differences. There was one child born of the marriage, who is currently thirteen years old. Both parties were bona fide residents of New Jersey at the time the cause of action arose, and both parties were bona fide resi-

dents of New Jersey for at least one year prior to the filing of the complaint on October 25, 2012.

The court grants a dual judgment of divorce to the parties on the grounds of irreconcilable differences, and the parties' marriage is hereby dissolved.

## Conclusion

Plaintiff will begin to receive her equitable share of the PERS pension when defendant begins to receive pension benefits. The parties shall submit a QDRO, which protects plaintiff's interest in the PERS pension. The actual amount that plaintiff will receive is presently unknown, and is contingent upon several factors, including defendant's total years of service, age at retirement and life span.

**[At the court's direction, the remainder of the court's ruling has been omitted from the published opinion.]**