**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0674-20

JOHN A. VARGAS,

     Plaintiff-Respondent,

v.

MARIA E. COLON,

     Defendant-Appellant.

_____

Submitted February 28, 2022 – Decided March 10, 2022

Before Judges Sabatino and Mayer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-1425-19.

Keith, Winters, Wenning & Harris, LLC, attorneys for appellant (Brian D. Winters and Marie-Christine Aziz, on the briefs).

Almasy LaMountain, LLC, attorneys for respondent (Kimberley Almasy LaMountain, on the brief).

PER CURIAM

Defendant Marie E. Colon appeals from an October 5, 2020 final judgment of divorce (FJOD) limited to whether the family part judge abused her discretion in rejecting a claim for equitable distribution of a pension held by plaintiff John A. Vargas. We reverse and remand.

After nearly twenty years of marriage, the parties decided to divorce. The family part judge conducted a one-day trial in June 2020. Plaintiff and defendant testified at the divorce trial. At the conclusion of the testimony, the judge permitted counsel to present written summations. After considering the testimony, documentary evidence, and summations, on October 5, 2020, the judge issued a FJOD and attached a ten-page written decision, including rejection of defendant's claim for equitable distribution of plaintiff's pension.

In denying defendant's request for equitable distribution of plaintiff's pension, the judge reviewed the factors under the equitable distribution statute, N.J.S.A. 2A:34-23.1, and made the following findings.

Plaintiff was sixty-five years old and disabled after suffering a stroke in 2012. Before his stroke, plaintiff worked for the United States Postal Service and earned between $40,000 and $45,000 per year. He received a pension from his service as a postal worker and started collecting that pension in 2015. At the time of trial, plaintiff's monthly income consisted of $1908 in Social Security

A-0674-20

benefits, $139 in Veteran's Administration benefits, and $1095 in United States Postal Service pension benefits. According to plaintiff, his monthly expenses exceeded $2805, leaving him with about $300 each month after paying expenses.

Defendant was fifty-six years old at the time of the divorce action. Defendant cared for plaintiff following his stroke until 2016 when she was declared disabled due to various health conditions. Defendant earned more than plaintiff during the marriage with an income between $58,000 and $62,000 annually. She had no pension. At the time of trial, defendant received $1022 monthly in Social Security disability benefits. She supplemented her monthly income by babysitting and selling crafts.

During the marriage, defendant had owned a two-family home that she acquired in 2006. However, plaintiff executed a written waiver of any interest in the home and was never listed on the deed. In 2014, defendant lost the home in a foreclosure action.

The parties intermittently lived in separate residences for nearly half their marriage. At times throughout the marriage, plaintiff lived in defendant's house prior to the foreclosure, and defendant lived in plaintiff's rented apartment. When the parties lived together, defendant paid rent, utilities, insurance, and other necessities. During the entire marriage, plaintiff paid the utilities only

3

twice and purchased groceries only three times. According to defendant, she relied predominantly on her own earnings rather than plaintiff's income to pay the couple's expenses. The parties did not have a joint bank account and did not file joint tax returns.

Based on the testimony, the judge concluded the standard of living during the marriage "only slightly exceeded mere existence." The parties "purchased no items of luxury, took no vacations, and did not eat out." She further found the parties had minimal savings. Because both parties were disabled, the judge determined neither party could earn an income or become gainfully employed in the future.

Plaintiff's pension was the only asset available for equitable distribution. According to the undisputed testimony, plaintiff worked for the post office for ten years prior to the couple marrying in 1999. Defendant contended she was entitled to equitable distribution of a percentage of plaintiff's pension accruing during the marriage and requested the judge sign a qualified domestic relations order (QDRO) to effectuate that distribution.[1] Plaintiff asserted defendant had no entitlement to any portion of his pension because defendant did not share

---

[1] Because the pension involved a federal employee, the document for distributing such pension funds is known as a court order acceptable for processing (COAP), rather than a QDRO.

certain marital proceeds, including $16,000 in retroactive Social Security benefits. He also claimed he required the entire pension amount to pay his expenses.

In applying the statutory factors governing equitable distribution, the judge found "the only property capable of equitable distribution is the [p]laintiff's pension, as to which there was no testimony regarding [the] present value or that portion of that pension accrued during [the] marriage." Thus, the judge declined to order any equitable distribution of the pension.

On appeal, defendant contends the family part judge abused her discretion in denying her right to a share of that portion of plaintiff's pension accruing during the marriage. She argues a QDRO could be presented to the pension administrator, allocating a court-ordered percentage of plaintiff's pension payable to her monthly. Defendant asserts requiring expert testimony to establish a present value is an unduly burdensome expense and unnecessary because she did not seek a lump sum payment from plaintiff's pension. We agree.

N.J.S.A. 2A:34-23.1 governs equitable distribution of marital assets. A marital asset "is that which was earned, or otherwise acquired, during the period in which the parties acted in pursuit of the shared enterprise of a marriage . . . ."

5

Thieme v. Aucoin-Thieme, 227 N.J. 269, 285 (2016).  We review equitable distributions awards for abuse of discretion.  Slutsky v. Slutsky, 451 N.J. Super. 332, 356 (App. Div. 2017).

N.J.S.A. 2A:34-23(h) authorizes the trial court to divide marital assets by "mak[ing] such award or awards to the parties, . . . to effectuate an equitable distribution of the property . . . ."  Under the equitable distribution statute, "[i]t shall be a rebuttable presumption that each party made a substantial financial or nonfinancial contribution to the acquisition of income and property while the party was married."  N.J.S.A. 2A:34-23.1.  Thus, "all property, regardless of its source, in which a spouse acquires an interest during the marriage shall be eligible for distribution in the event of divorce."  Winer v. Winer, 241 N.J. Super. 510, 525 (App. Div. 1990) (quoting Painter v. Painter, 65 N.J. 196, 217 (1974)).

When divorcing parties cannot agree on how to distribute property, the family part judge should use his or her discretion to effectuate a fair and just division of marital assets.  Steneken v. Steneken, 183 N.J. 290, 302-04 (2005). In reviewing an asset subject to equitable distribution, the court must identify the marital property, determine its value, and equitably distribute the property. See  Painter, 65 N.J. at 217.

A-0674-20

In reviewing an equitable distribution determination by a family part judge, we are mindful that our review "pertaining to the division of marital assets is narrow." Sauro v. Sauro, 425 N.J. Super 555, 573 (App. Div. 2012) (citing Valentino v. Valentino, 309 N.J. Super. 334, 339 (App. Div. 1998)). We must decide whether the court "mistakenly exercised its broad authority to divide the parties' property or whether the result reached was bottomed on a misconception of law or findings of fact that are contrary to the evidence." Ibid. (citing Genovese v. Genovese, 392 N.J. Super. 215, 223 (App. Div. 2007)). Generally, a family part judge's determination as to assets available for distribution, as well as the valuation of those assets, are given deference so long as they are amply supported by the record. La Sala v. La Sala, 335 N.J. Super. 1, 6 (App. Div. 2000). We will affirm an equitable distribution determination if "the trial court could reasonably have reached its result from the evidence presented, and the award is not distorted by legal or factual mistake." Ibid. (citing Perkins v. Perkins, 159 N.J. Super. 243, 247-48 (App. Div. 1978)).

However, we will reverse an equitable distribution decision if the court "failed to consider all of the controlling legal . . . principles," M.G. v. S.M., 457 N.J. Super. 286, 294 (App. Div. 2018) (quoting Gonzalez-Posse v. Ricciardulli, 410 N.J. Super. 340, 354 (App. Div. 2009)), or when its analysis was "clearly

7

unfair or unjustly distorted by a misconception of law." Ibid. (quoting Perkins, 159 N.J. Super. at 247).

The present value method for distribution of a pension applies where there are sufficient marital assets to be divided. See Menake v. Menake, 348 N.J. Super. 442, 448 (App. Div. 2002). However, where marital assets are insufficient, or the parties are unable to afford an expert to address present valuation, as in this case, the better approach for evaluating equitable distribution of an asset is the deferred distribution method. Ibid. Under this method, the court considers the coverture facture of the pension over the course of the marriage. Claffey v. Claffey, 360 N.J. Super. 240, 256 (App. Div. 2003). (holding the coverture fraction is the number of years during the marriage the pensioner spouse was a member of the pension plan, divided by the total number of years that the pensioner spouse was a member of the pension plan to arrive at the portion of the pension subject to equitable distribution). Once the court "determines the non-pensioner spouse's equitable distribution percentage interest in that coverture fraction, then a QDRO [or COAP here] is used to distribute that interest to the non-pensioner spouse at the time of the retirement of the pensioner spouse." Ibid. "[T]he amount distributed is not determined in

present dollars, but is paid in future dollars at the time of retirement in an amount determined by application of the [above] formula." Id. at 257.

Here, the judge declined to equitably distribute plaintiff's pension because "there was no testimony regarding the present value or that portion of that pension accrued during marriage." However, defendant testified at trial the parties discussed her receiving a forty percent share of plaintiff's pension, equaling about $423 per month. Defendant also told the judge she paid for a QDRO to process receipt of her portion of plaintiff's pension and the draft QDRO was admitted as evidence during the trial.

Defendant further explained plaintiff started working at the post office in 1989 but her entitlement to a portion of his future pension only accrued after the parties married in 1999. Plaintiff started collecting from his pension in 2015. Thus, determining the coverture fraction for division of plaintiff's pension is a simple mathematical calculation. Defendant's testimony and the draft QDRO demonstrated plaintiff's pension could be equitably distributed absent present value testimony from an expert.

Having reviewed the record, we are satisfied the judge abused her discretion by requiring testimony as to the present value of plaintiff's pension to enter an equitable distribution award. Here, defendant paid for preparation of a

9

QDRO in anticipation of receiving a deferred distribution from plaintiff's pension, payable monthly by the pension plan administrator. Moreover, the judge recognized the parties were limited financially and unlikely to be able to afford an expert.

The judge heard the parties' testimony regarding the marital lifestyle and finances. Therefore, the judge had sufficient information to divide plaintiff's pension in a percentage relative to the period the parties were married and living under the same roof, giving due consideration to the parties' testimony regarding payment of expenses during the marriage and disposition of other marital assets prior to the divorce action. Because plaintiff's pension was the couple's only asset at the time of the divorce proceeding, the judge should have considered distribution of that asset without expert testimony, allocated a percentage share of the pension to defendant, and signed a COAP to effectuate deferred distribution of plaintiff's pension.

For these reasons, we are constrained to vacate the portion of the FJOD addressing equitable distribution and remand the issue to the family part judge to consider distribution of a percentage of plaintiff's pension as would be equitable under the circumstances without the necessity of retaining an expert to perform a present value calculation. On remand, the judge may consider the

premarital portion of the pension acquired by plaintiff, the period the marriage the parties lived separate and apart, and any other issues that would factor into a fair determination of defendant's entitlement to a portion of plaintiff's pension.

Vacated in part and remanded as to the issue of equitable distribution. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11